No. 86-249

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

_____

IN RE THE MARRIAGE OF
MAYBELLE H. WATSON,

          Petitioner and Respondent,

   and

JOHN W. WATSON,

          Respondent and Appellant.

_____

APPEAL FROM: District Court of the Eighth Judicial District,
            In and for the County of Cascade,
            The Honorable Thomas McKittrick, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Bottomly & Gabriel; Robert W. Gabriel, Great Falls,
        Montana
        Strause & Anderson; Lawrence A. Anderson, Great Falls,
        Montana

    For Respondent:

        Regnier, Lewis & Boland; Thomas Boland, Great Falls,
        Montana

_____

Submitted on Briefs: April 30, 1987

Decided: July 13, 1987

Filed: **JUL 13 1987**

_____
Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

The husband, John Watson, appeals the marital property distribution as ordered by the Cascade County District Court. The issues on appeal are:

1) Whether the District Court abused its discretion in dividing the marital property?

2) Whether the District Court erred in offsetting the $28,000 maintenance award from the property awarded to the husband?

We affirm.

The wife, Maybelle Watson, married her first husband, Walter Evers, in 1930 and had two children by him, Judy Evers Kurth and Jon Evers. The Evers lived on a ranch in Chouteau County, Montana. Mr. Evers died in 1948 and left his entire estate to his wife. After Mr. Evers' death, the wife ran the ranch with the help of two hired men. In 1948, representatives from the Hutterite colony offered the wife, according to her son and son-in-law, approximately $500,000 for the ranch. The wife declined the offer, explaining that she ran a family ranch which was not for sale to outsiders. At present, the family ranch is now in its fifth generation.

In 1950, the wife married the husband in this action, John "Jock" Watson, a bartender at the Vet's Club in Fort Benton, Montana. The husband had some ranching experience, helping his mother raise dairy cows. In 1949, one year before the marriage, the husband declared a net farm loss of $11.50 on his tax return. He brought approximately five head of cattle to the ranch at the time of the marriage. When the parties were married, the ranch debt totalled $65,000. That debt was assumed in 1959 by the wife's daughter and

2

son-in-law, Judy and Dick Kurth, when the couple was deeded 2,925 acres of the ranch. From 1959 forward, the ranch has been operated debt-free.

In the first few years of the marriage, the husband, among other things, assisted in the building of a tin roof on a shed and performed occasional concrete work. The ranch was largely fenced by contract labor and the ground which was broken into farmland was similarly accomplished through the efforts of hired laborers and the wife's son-in-law. The wife claims that she was expanding ranch operations before she married the appellant. With the exception of a strip of abandoned railroad right-of-way, no additional real property was purchased for ranching purposes. However, the parties did purchase real property in Idaho, Arizona, Chouteau County, Montana, and Glacier County, Montana. Beginning in 1967, the parties spent the winters in Arizona. From 1968 to 1972, the wife's son-in-law, Dick Kurth, and other full-time hired men managed the affairs of the ranch. Kurth operates a ranch of his own in Chouteau County. Kurth testified that the husband repeatedly requested help, so much so that Kurth oftentimes could not get his own work done. From 1972 to 1977, the wife's son, Jon Evers, and his wife managed the ranch while the parties wintered in Arizona. Over this period of time, Evers significantly increased his management role at the ranch. From 1977 to the present, Evers and his wife have operated the ranch pursuant to three separately written contracts - a contract for the sale of livestock, equipment, and machinery, a farm rental agreement, and a contract for deed to a portion of the ranch property. The son and his wife made several equipment purchases and undertook many improvements which have contributed to the value of the ranch.

3

In valuing the ranch property which is at the heart of the dispute, the District Court considered the opinions of both parties' appraisers, and those of Evers and Kurth. The court noted that Kurth has been in the cattle business for 35 years and has been commended and recognized by several livestock groups as well as the governor of Montana for his experience and background in ranching. The court accepted the opinion of the wife's appraiser as to the per acre value of the cropland, grazing land, and the value of building improvements. The court made its own determination as to the per acre value of the mountain place grazing land located on the ranch after considering the opinions of the husband's appraiser, Kurth, and Evers, and further noted that neither party's appraiser considered the detrimental effect of alkali on the value of the ranch. The judge concluded that the ranch's value at the time of marriage was $500,000 and $767,400 at the time of hearing.

In the property division, the husband was awarded property worth $520,000. The wife received the balance of the marital estate, or property worth approximately $952,000. We set out the pertinent part of the award:

> 112. After full consideration of each of the above findings including the value of Maybelle Watson's ranch prior to her marriage, the appreciated value of that ranch during the marriage and the contributions made by Jock Watson individually to the appreciated value of the ranch, the Court finds that Jock Watson is entitled to the following:
>
> a. The parties' property in the state of Idaho.
>
> b. The parties' property in the state of Arizona.
> c. The parties' property in Fort Benton, Montana.

4

d. The parties' 1979 Dodge pickup truck.

e. The parties' 1984 Chevrolet automobile.

f. The following life insurance policies which have an accumulated face value of $40,000:

1. New York Life policy No. 21866466 with a face amount of $10,000.

2. Prudential policy No. 33008325 with a face amount of $20,000.

3. Both National Service Life policies with a combined face value of $10,000.

g. Cash in the amount of $200,000.

h. The Donald Scott receivable in the principal amount of $12,000.

i. One-half of the barley check currently in the possession of Maybelle Watson which said barley check is in the amount of $3,796, half of which is $1,898.

j. One-half of the parties' 1984 net winter wheat crop proceeds after the parties' spraying and fertilizer expenses have been deducted pursuant to the lease agreement with Jon and Teri Evers.

113. The Court finds that the approximate present value of its award to Jock Watson is $520,000.

114. The Court finds that the balance of the marital estate not described in finding of fact No. 112 hereinabove should be awarded to Maybelle Watson.

In July 1986, the husband filed a motion for temporary living expenses. He requested an award of $28,000, not to be offset against his marital property award. In his motion, the

5

husband acknowledged a present balance of $27,597.16 in his two bank accounts. The court granted the motion but offset the $28,000 award against the marital property award to the husband.

The first issue is whether the District Court abused its discretion in dividing the marital property. The standard of review is found at § 40-4-202, MCA. That statute gives the court the authority to equitably apportion marital property in a dissolution proceeding. A district court has far-reaching discretion in resolving property divisions and its judgment will not be altered unless a clear abuse of discretion is shown. Buxbaum v. Buxbaum (Mont. 1984), 692 P.2d 411, 414, 41 St.Rep. 2243, 2246. Findings of fact will not be set aside unless they are clearly erroneous. First Nat. Mont. Bank of Missoula v. McGuiness (Mont. 1985), 705 P.2d 579, 42 St.Rep. 1288.

The husband first argues that the lower court abused its discretion by adopting verbatim the wife's proposed findings of fact without sufficient evidentiary grounds to do so. We cite two cases as authority on this point.

> [t]he danger in verbatim adoption of proposed findings from one party is that the court does not show itself to be exercising independent judgment . . . Nonetheless we have said that our ultimate test for the adequacy of findings of fact is whether they are sufficiently comprehensive and pertinent to the issues to provide a basis for decision and whether they are supported by the evidence presented.

First Nat. Mont. Bank of Missoula v. McGuiness (Mont. 1985), 705 P.2d 579, 584, 42 St.Rep. 1288, 1294. The record should reflect conscientious concern and participation by the district court. Goodmundson v. Goodmundson (1982), 201 Mont. 535, 538, 655 P.2d 509, 511. We note that the lower court

went to impressive lengths in detailing the long factual background of this case. While we continue to believe that a trial court must file its own findings and conclusions, the court should have guidance from the parties' attorneys. See Tomaskie v. Tomaskie (Mont. 1981), 625 P.2d 536, 38 St.Rep. 416. We of course realize that attorneys will attempt to portray the interests of their clients in a most favorable light. It is therefore incumbent upon the judge in a bench trial to gather the facts as seen from each side and discern the most accurate or probable set of circumstances. We note that the court made significant changes to the wife's proposed findings, including an increase in the cash award to the husband from $150,000 to $200,000. We conclude that the findings and conclusions are sufficiently comprehensive, pertinent to the issues, and supported by the evidence presented.

The husband next argues that the lower court failed to correctly value his interest in the ranch. We note that neither party personally testified at trial as to the ranch's value and therefore the court was forced to rely on the opinions of experts and laymen. The trier of fact has the discretion to give whatever weight he sees fit to the testimony of an expert. In re Marriage of McCormack (Mont. 1986), 726 P.2d 319, 43 St.Rep. 1833. However, that same trier of fact is free in its discretion to adopt the recommendation of a party or a layman over that of an expert. Goodmundson, 655 P.2d at 511. In valuing the ranch, the court relied on the expert appraisers and the opinions of Mr. Kurth and Mr. Evers, both longtime ranchers of this property. The court made its own determination as to the per acre value of the mountain place grazing land and the effect of alkali on the ranch's property value. In addition, there are several instances where the court settled on a property value

figure somewhere between the parties' proposals. We find substantial evidence to support the valuation findings of the trial court.

We believe it necessary to mention the fact that the source of marital property is a major factor to be considered by the District Court under § 40-4-202, MCA. See In re Marriage of Summerfelt (Mont. 1984), 688 P.2d 8, 41 St.Rep. 1775. In Summerfelt, we reversed the property distribution because the wife brought substantially more net worth into the marriage than did the husband. ($425,000 from the wife, $12,000 from the husband). Here, as in Summerfelt, the wife brought substantially more net worth into the marriage than the husband. When the parties married, the wife was in charge of an expanding ranching operation, while the husband was bartending in Fort Benton, and the owner of five head of cattle. In light of these facts a property distribution of $520,000 for the husband and $952,000 for the wife cannot be considered inequitable. We therefore defer to the decision of the trial court.

The second issue is whether the District Court erred in offsetting the $28,000 post-trial award from the husband's property settlement. Maintenance is allowed when two conditions exist: (1) the party seeking maintenance lacks sufficient property to provide for his reasonable needs; and (2) the party is unable to support himself through appropriate employment. In re Marriage of Korpela (Mont. 1985), 710 P.2d 1359, 42 St.Rep. 1912.

Here the District Court awarded the husband $28,000 in a post-trial motion, despite the fact that the husband had over $27,000 in his bank accounts. We quote the language in the order:

> 2. The money so transferred by Maybelle Watson Evers to Jock Watson pursuant to

8

> the Order of this Court herein shall be
> construed as being transferred in
> accordance with this Court's findings,
> conclusions and decree dated February 11,
> 1986, so that it is understood between
> the parties and their counsel that the
> money transferred by Maybelle to Jock
> pursuant to the Order of this Court
> herein is inclusive in and not in
> addition to those monies awarded to Jock
> Watson by this Court in its Decree of
> Dissolution dated February 11, 1986.

We agree that an offset was in order. The parties had been ordered to pay their own attorney fees and costs and the post-trial motion by the husband was primarily based upon the need to pay attorney fees and transcript costs. The maintenance award was not to alter or contradict the previous marital property award, and the court was correct in so stating.

Affirmed.

_____
Justice

We concur:

_____

_____

_____

_____
Justices

9