No. 88-55

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

LEVIN DAVIS AND SARA DAVIS,

        Plaintiffs and Appellants,

  -vs-

COURT V. SHERIFF, MARDI M. SHERIFF
and THE COMMERCIAL UNION INSURANCE
COMPANY, a Massachusetts corporation,

        Defendants and Respondents.

---

APPEAL FROM: District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable Henry Loble, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Mark P. Yeshe; Harrison, Yeshe & Murphy, Helena,
        Montana

    For Respondent:

        Paul Meismer; Garlington, Lohn & Robinson, Missoula,
        Montana
        James L. Jones; Dorsey & Whitney, Billings, Montana

---

Submitted on Briefs: Aug. 18, 1988

Decided: September 26, 1988

Filed: SEP 2 6 1988

Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Plaintiffs Levin and Sara Davis (the Davises) brought a malicious prosecution action against Court and Mardi Sheriff (the Sheriffs) and against Commercial Union Insurance Companies (Commercial). The Davises also filed first-party and third-party insurance bad faith claims against Commercial Union.

The District Court of the First Judicial District, Honorable Henry Loble presiding, directed verdicts for defendants on the malicious prosecution claims and on Mr. Davis's first-party bad faith claim. Trial was had on the remaining issue of third-party insurance bad faith. The jury returned a verdict in favor of the plaintiff Davises but awarded them only one dollar compensatory damages and one dollar punitive damages. The Davises' motion for a new trial on the issue of damages was denied December 16, 1987, and this appeal followed.

We affirm.

The Davises present the following issues on appeal:

Did the District Court abuse its discretion by

(1) directing verdicts on the malicious prosecution claims in favor of Sheriffs and Commercial;

(2) directing the verdict for Commercial on the first-party insurance bad faith claim;

(3) refusing to grant a new trial as to compensatory damages;

(4) refusing to grant a new trial as to punitive damages; and

(5) refusing to admit plaintiffs' proposed exhibit number 45 on damages.

This malicious prosecution suit arises out of a series of events beginning with a fire in 1977. As of March 22,

2

1977, the Davises were managing/leasing the Yacht Basin Bar and Restaurant from the Sheriffs until a fire on October 1, 1977, destroyed the premises, including property of the Davises. The Davises asserted that the cause of the fire was a leaky roof which caused a short in the electrical system.

The Davises lost roughly $10,000 due to the fire. They attempted to recover this sum from Commercial Union who insured the premises for the Sheriffs. Commercial Union refused to pay, saying that the cause of the fire was either arson or negligence on the part of the Davises. It was determined that a burner had been left on either by the Davises or one of their employees. This, however, was disputed as the cause of the fire since at least one expert testified that the fire could not have started in the kitchen. However, Commercial Union then counterclaimed in the amount of $150,000 in damages for the building, which amount was later reduced to $75,000. Eventually, that claim was dropped all together. It was that counterclaim that forms the basis for this action.

Trial was had on those issues which resulted in a verdict for the Davises for their loss of $10,000. (Levin and Sara Davis v. Court V. and Mardi M. Sheriff, Cause No. 44240). However, it cost the Davises $5,000 to recover that money due to them under the insurance policy because of Commercial Union's refusal to pay the claim, their counterclaim and their insistence on litigating the matter. Thus, the Davises suffered an out-of-pocket loss of $5,000, and this claim of malicious prosecution against the Sheriffs and their insurance company resulted.

The Davises also claimed that they were listed as insured on the policy and they filed a first-party as well as a third-party insurance bad faith claim against Commercial Union. The first-party claims were dropped by the District

3

Court on a motion for directed verdict. Likewise, verdicts on the malicious prosecution claims were directed in favor of both defendants. Davises assign those directed verdicts as abuse of discretion by the District Court. We disagree.

I. Standard of Review

The standard for reviewing a trial court's judgment was set forth by this Court recently in Marriage of Watson (Mont. 1987), 739 P.2d 951, 44 St.Rep. 1167. There, we stated that a District Court's judgment, when based on substantial credible evidence, will not be altered unless a clear abuse of discretion is shown. Watson, 739 P.2d at 954, 44 St.Rep. at 1170. In In re Marriage of Stewart (Mont. 1988), 757 P.2d 765, 45 St.Rep. 850, this Court specifically condemned previous language regarding the standard of review. Determinations of whether the district judge acted arbitrarily, without the employment of conscientious judgment or exceeded the bounds of reason were specifically rejected by this Court. We have defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." State v. Lamb (1982), 198 Mont. 323, 646 P.2d 516.

Thus, for each issue raised by the Davises, this Court should defer to the discretion of the trial court unless this Court finds that the District Court's ruling was not based on substantial credible evidence and was an abuse of discretion.

II. Directed Verdicts

We defined the standard for a directed verdict as follows:

> The test commonly employed to determine
> if the evidence is legally sufficient to
> withdraw cases and issues from the jury
> is whether reasonable men could draw

4

> different conclusions from the evidence.
> [Citations omitted.] If only one con-
> clusion is reasonably proper, then the
> directed verdict is proper.

Semenze v. Leitzke (Mont. 1988), 754 P.2d 509, 511, 45
St.Rep. 829, 831.

Thus, in this case the District Court granted the
directed verdicts because it held there was insufficient
evidence to support the claims of malicious prosecution and
first-party insurance bad faith. We agree.

III. Malicious Prosecution

The burden on plaintiffs asserting malicious prosecu-
tion is heavy. They may only recover damages when each of
the six essential elements of the claim are fully "complied
with." Orser v. State (1978), 178 Mont. 126, 582 P.2d 1227.
It is well settled that those six elements are as follows:

    (1)    a judicial proceeding commenced and prose-
           cuted against the plaintiff;

    (2)    the defendant's responsibility for litigating,
           prosecuting, or continuing the proceeding;

    (3)    lack of probable cause for the defendant's
           acts;

    (4)    that the defendant was actuated by malice;

    (5)    that the proceeding terminated in favor of
           the plaintiff; and

    (6)    that the plaintiff suffered damages.

See, Vehrs v. Piquette (1984), 210 Mont. 386, 390, 684 P.2d
476, 478; Reece v. Pierce Flooring (Mont. 1981), 634 P.2d
640, 642, 38 St.Rep. 1655, 1657-1658.

If one of these elements is not proved, verdict may be
directed for the defendant. Orser, 582 P.2d at 1232; St.

Paul Mercury Insurance Co. v. Jeep Corp. (1977), 175 Mont. 69, 71, 572 P.2d 204, 205.

It is clear from the evidence in the case at bar that plaintiffs' case lacks evidence against both defendants on the issues of lack of probable cause and malicious intent. Evidence of the remaining elements is also weak. Because plaintiffs are not able to prove a prima facie case of malicious prosecution, their claim must fail as a matter of law and verdict was properly directed.

The first issue is that of probable cause on which to base the defendants' counterclaim. The record is clear that defense counsel acting for Sheriffs had probable cause before instituting the counterclaim. Because the damages sought in the counterclaim arose out of the same transaction and same set of facts as the plaintiffs' suit, defense counsel properly viewed his claim as a compulsory or mandatory counterclaim under Rule 13(a), M.R.Civ.P., and knew he must assert his clients' claim or it would be barred. That would be no excuse for negligent factual investigation, but this fact coupled with the interviews conducted by counsel Drake defeats the claim of lack of probable cause.

Most noteworthy in Drake's factual investigation is the following. Ed Herzog, the insurance adjuster, filed a report that listed the cause of fire as arson. Drake reviewed this report and interviewed Herzog personally as to that report prior to filing his counterclaim. Drake also interviewed Dan Schulte, a prospective buyer of the Yacht Basin Bar and Restaurant. One week before the fire, Schulte had hired Deputy State Fire Marshall Matt Kunnary to inspect the electrical and wiring system on the premises. Drake confirmed with Schulte that Kunnary's report showed the electrical system to be "in good working order."

6

Thus, there was a real dispute among the experts as to the cause of the fire and plaintiffs' claim of faulty electrical wiring was discounted on at least two occasions. From the foregoing, one could reasonably find probable cause to assert the Sheriffs' counterclaim and plaintiffs' prima facie case of malicious prosecution fails. The verdict was properly directed in favor of defendants.

Because Davises fail on this element and their case against the Sheriffs fails, we will not discuss the other areas revealed by the record of insufficient evidence for this claim.

The Davises next allege malicious prosecution against Commercial Union under the same facts. However, probable cause existed for the insurance company just as for the Sheriffs, as discussed above, and plaintiffs' case fails.

We find no reason to discuss the other issues on which plaintiffs' case against Commercial also fails. Verdict was properly directed in favor of Commercial Union on the malicious prosecution claim.

IV.  First-Party Insurance Bad Faith Claim

Plaintiff Mr. Davis next assigns error to the directed verdict on his claim of first-party insurance bad faith. Mr. Davis asserts that since he was listed on the policy as an insured, he should be afforded a status such that the statutory duty Commercial Union owed to the Sheriffs was likewise owed to Mr. Davis.

However, plaintiff's case fails both in evidence and by his conduct. Plaintiff failed to bring forth evidence of any specific statutory violations by Commercial and even failed to present evidence of general business practice.

Additionally, Davis's conduct complicates his case. The only possible "duty" owed by Commercial to Davis would

7

have been to provide a legal defense to Davis for the counterclaim and then indemnify if necessary in that suit. But the record clearly shows Davis retained his own counsel and at no time requested Commercial to defend. Thus, even though Commercial had knowledge of the suit pending, bad faith cannot be found for not providing what has not been requested. Likewise, we will not stretch the contractual fiduciary duty of an insurer to cover this situation where Davis made no claimant contact with Commercial, no request for defense, and no request for indemnity. The status argument has been treated by Davis as an afterthought.

From the foregoing want of evidence to support any existing theory of bad faith, verdict was properly directed.

V. New Trials

Davises also appeal from denial of their request for a new trial on the issues of compensatory and punitive damages. Davises assert that both damages awards are inadequate, that they are contrary to the law as given to the jury, and contrary to the weight of the evidence. Davises argue that since the evidence of their damages was uncontroverted, they are somehow entitled to the amount alleged as a matter of right. We disagree.

Although appeals as to damages usually occur because the amount awarded is alleged to be excessive rather than inadequate, the law in Montana as to damages is well-settled. The amount of damages is committed first to the discretion of the jury and next to the discretion of the trial judge who, in passing on the motion for a new trial, may set aside the verdict if it is not just. Dahlin v. Rice Truck Lines (1960), 137 Mont. 430, 352 P.2d 801. "This Court will not substitute its judgment for that of the jury, especially where, as here, the trial court has approved the verdict by

8

denying the motion for a new trial." Dahlin, 137 Mont. at 438, 352 P.2d at 805, quoting McNair v. Berger (1932), 92 Mont. 441, 15 P.2d 834. Accord: Sullivan v. City of Butte (1930), 87 Mont. 98, 285 P. 184; Teesdale v. Anschutz Drilling Co. (1960), 138 Mont. 427, 357 P.2d 4; Wyant v. Dunn (1962), 140 Mont. 181, 368 P.2d 917; Hurly v. Star Transfer Co. (1962), 141 Mont. 176, 376 P.2d 504; Vogel v. Fetter Livestock Co. (1964), 144 Mont. 127, 394 P.2d 766.

Thus, the standard of review is not whether the nominal damages are inadequate, but rather, whether the trial court abused its discretion in refusing to grant a new trial. It is fundamental to our system of trial by jury that the factfinder who hears the evidence possesses the right to judge the credibility of the witnesses and may accept or reject the evidence offered. In the case at bar, after a week of testimony and lengthy explanation of the underlying years of litigation and previous damage awards made to the Davises, the jury determined the appropriate award for the Davises in this case was two dollars.

The trial judge, relying on the same evidence and the knowledge that damage awards are left first to the sound discretion of the jury, properly refused to upset that jury determination.

It should be further noted that no plaintiff is ever entitled to exemplary damages as a matter of right, regardless of the situation or the sufficiency of the facts. Spackman v. Ralph M. Parsons Co. (1966), 147 Mont. 500, 414 P.2d 918.

Based on the law and the record in this case, Davises fail to convince this Court that the trial court abused its discretion.

VI.   Proposed Exhibit 45

Plaintiffs next assign as error the refusal of their proposed exhibit number 45. Exhibit 45 was a written summary which purported to show the financial arrangement between Davises and their counsel and the disposition of funds recovered from the underlying tort action as evidence of Davises' damages.

The District Court properly refused to admit Exhibit 45 because it was a writing containing hearsay. This writing did not fit into any hearsay exception under Rule 801, M.R.Evid. Further, it was not the exclusive evidence on this issue. The record reveals that the trial judge invited counsel to present oral testimony in lieu of Exhibit 45 to reach the same result, but counsel totally discontinued his line of questioning when Exhibit 45 was refused.

A District Court's ruling on the admissibility of certain evidence will not be disturbed absent a showing of an abuse of discretion. Cooper v. Rosston (Mont. 1988), 756 P.2d 1125, 45 St.Rep. 978. Under these facts, Davises fail to prove that the trial court abused its discretion by refusing to admit Exhibit 45, especially when the trial judge encouraged the evidence to come in through other means.

Finding no abuse of discretion by the trial judge on any of the five issues raised by Davises, judgment is hereby affirmed.

_____
Chief Justice

10

We concur:

_John Conway Harrison_

_William E. Hunt, Sr._

_Fred J. Weber_

_L. C. Gulbrandson_
Justices