No. 88-233

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

IN RE THE MARRIAGE OF
LINDA KATHLEEN SYLJUBERGET,

          Petitioner and Respondent,

  and

GARY WARREN SYLJUBERGET,

          Respondent and Appellant.

---

APPEAL FROM: District Court of the Fifteenth Judicial District,
In and for the County of Sheridan,
The Honorable M. James Sorte, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        K. Dale Schwanke; Jardine, Stephenson, Blewett & Weaver,
        Great Falls, Montana
        David Cybulski, Plentywood, Montana
        Ken Hoversland, Scobey, Montana

    For Respondent:

        Loren J. O'Toole, Plentywood, Montana

---

Submitted on Briefs: Aug. 26, 1988

Decided: September 27, 1988

Filed: SEP 2 7 1988

*Ethel M. Harrison*

Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal brought by the appellant, Gary Warren Syljuberget, from a marital dissolution order of the Fifteenth Judicial District, Sheridan County, awarding Wife custody of the parties' only child, child support of $200 per month, maintenance of $200 per month for one year, one-half the sale proceeds of the marital home, and one-half her attorney's fees. We affirm the District Court on all issues.

Husband raises five issues for our review:

1. Whether the District Court erred in awarding sole custody to Wife.

2. Whether the District Court erred in awarding Wife $200 per month child support.

3. Whether the District Court erred in distributing the marital estate.

4. Whether the District Court erred in awarding Wife maintenance.

5. Whether the District Court erred in awarding Wife one-half her attorney's fees.

Linda Kathleen Syljuberget and Gary Warren Syljuberget were married June 10, 1983. On July 21, 1983, the parties only child, Amanda Valeta Syljuberget, was born. The parties' resided in the family home located at 421 East 1st Avenue, Plentywood, Montana. Husband owned the property prior to their marriage.

The parties separated on August 8, 1985. Wife was given temporary custody of Amanda until trial. On September 16, 1985, the parties stipulated to $175 per month as a reasonable amount of child support. Wife remained in the family residence in Plentywood pending dissolution. Husband now lives in Livingston, Montana.

On January 23, 1987, Wife moved to hold Husband in contempt for failing to pay child support; Husband was in arrears approximately $2,525. On March 2, 1987, the District Court ordered Husband to pay $200 per month child support. In addition, the court enjoined Husband from entering the family residence until completion of the action.

Husband and Wife were involved in a number of business ventures, beginning in 1976 and continuing until their separation. At various times during this period, the parties jointly operated stores in Billings, Montana, Crosby, North Dakota and Plentywood, Montana. Wife managed the day-to-day operations of the business, while Husband oversaw the financial matters. Each party financially invested in the stores. Husband had significant resources and extensive financial experience and Wife contributed cash savings and amounts received from the sale of two trailer homes. In addition, the parties obtained a number of business loans, including one secured by a mineral interest inherited by Wife which was satisfied prior to dissolution.

Neither party drew a regular salary from their work. Instead, money was occasionally withdrawn from profits to reinvest or make loan payments and improvements to the family home.

As the stores gradually became unprofitable, the parties were forced to liquidate other assets, including taking additional mortgages on the family home. Finally, the Plentywood store was sold at a loss.

After separation Husband moved to Livingston, Montana, where he acquired two Town Pump Covenience Stores. In addition to his two stores, Husband owns a one-third interest in BOS Enterprises, certificates of deposit worth $2,225, various recreational vehicles and boats, and a note receivable worth $10,000. Husband nets approximately $8,000

3

per year through his part-time accounting practice. At trial, financial statements were introduced evidencing Husband's net worth to be between $105,000 and $211,000.

Wife works as an advertising salesperson for a local radio station. She earns a net salary of $694 per month, plus commissions of $150 per month.

On February 22, 1988, the District Court issued its final decree awarding sole custody of Amanda to Wife, plus $200 per month child support, $200 per month maintenance for one year, one-half the proceeds from the sale of the family residence and one-half Wife's attorney's fees.

## I.

The first issue raised by Husband is whether the court was correct in awarding sole custody to Wife. Husband argues the District Court failed to property state in its decision the reasons considered in making the custody award, in accordance with § 40-4-212, MCA. Instead, Husband argues the evidence supported an award of joint custody.

The standard of review on custody issues was discussed in Bier v. Sherrad (Mont. 1981), 623 P.2d 550, 551, 38 St.Rep. 158, 159:

> In order to prevail, [the appellant] must show an abuse of discretion by the judge, must demonstrate that there is a clear preponderance of evidence against the findings, and must overcome the presumption that the judgment of the trial court is correct. In reviewing the District Court's custody order, this Court need only look to the record to see if the factors set forth in section 40-4-212, MCA, were considered, and then must determine whether the trial court made appropriate findings with respect to these criteria. (Citations omitted.)

4

In all cases, the primary importance is placed on determining the best interest of the child. Section 40-4-212, MCA (1985). The court shall consider all relevant factors including:

(1) the wishes of the child's parent or parents as to his custody;

(2) the wishes of the child as to his custodian;

(3) the interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interest;

(4) the child's adjustment to his home, school, and community; and

(5) the mental and physical health of all individuals involved.

Husband correctly asserts the District Court must presume joint custody is in the best interest of the child. However, the District Court may, under the factors set forth above, decline to order joint custody. Section 40-4-224(1), MCA (1985). In such cases, the judge must enter in his decision the reasons for a denial. While we recognize the District Court's findings were not exemplary, we nonetheless find no error.

This Court will not substitute its judgment for that of the trier of fact. "The responsibility for deciding custody is a delicate one which is lodged with the district court." In re Marriage of Manus (Mont. 1987), 733 P.2d 1275, 1277, 44 St.Rep. 398, 401, quoting Gilmore v. Gilmore (1975), 166 Mont. 47, 51, 530 P.2d 480, 482. "[T]he trial court is in the best position to observe the witnesses and acquire a feel for their credibility and character." In re Marriage of J.J.C. (Mont. 1987), 739 P.2d 465, 467, 44 St.Rep. 1068, 1071. The record indicates that Amanda was well adjusted to

5

her home in Plentywood, where she had many friends and relatives. Amanda has spent the great majority of her life with her mother, and they enjoy a good and continuous relationship. On the other hand, Mr. Syljuberget was often separated from his daughter, having moved to Livingston. During sporadic visits to Plentywood, Mr. Syljuberget admitted to taking Amanda into bars, for lack of any other place to visit. Testimony also alluded to possible alcohol related problems. The District Court found sole custody to be in Amanda's best interest.

Additionally, parental cooperation is a key factor in an award of joint custody. In re Marriage of Jacobson (Mont. 1987), 743 P.2d 1025, 1027, 44 St.Rep. 1678, 1680. The District Court saw no such cooperation. Indeed, the record reveals numerous instances of hostility, meddling and harassment, culminating in the temporary relief order of March, 1987. Viewing the record as a whole, strong evidence exists to support the District Court's award of sole custody to the wife. On this basis, we find no abuse of discretion.

## II.

The second issue raised by Husband is the award of child support. Neither party disputes the appropriateness of child support. Husband's only complaint surrounds the amount awarded by the District Court.

> In reviewing child support issues, our standard is that the "award made by the District Court will not be disturbed on appeal unless there has been a clear abuse of discretion resulting in substantial injustice."

In re Marriage of Tonne (Mont. 1987), 733 P.2d 1280, 1284, 44 St.Rep. 411, 416, quoting Grenfell v. Grenfell (1979), 182 Mont. 229, 232, 596 P.2d 205, 207.

6

The District Court was well aware of the parties' original stipulation of $175 per month child support. However, evidence on the record nonetheless supports the trial judge's award of $200 per month. Most illustrative is the temporary relief order, entered March 2, 1987, ordering Husband to pay an additional $25 per month for past due child support amounts. Additionally, Husband is financially able to pay the amount awarded. No abuse of discretion appears in the District Court's award of child support.

### III.

Third, Husband argues the District Court improperly distributed the marital estate. Again, this Court recognizes the District Court has far-reaching discretion in resolving property divisions in dissolution proceedings and its judgment will not be altered unless a clear abuse of discretion is shown. In re Marriage of Watson (Mont. 1987), 739 P.2d 951, 954, 44 St.Rep. 1167, 1170.

Section 40-4-202, MCA (1985), governed the division of property in a marital dissolution. The trial court need not articulate each factor separately as long as the findings are sufficient to allow non-speculative review by this Court. In re Marriage of Reid (Mont. 1987), 733 P.2d 1302, 1304, 44 St.Rep. 500, 503. These factors give the lower court ample latitude to equitably divide the property.

Husband disputes two aspects in the property division: the inclusion of the home in the marital estate, and the exclusion of Wife's mineral interest.

First, Husband disputes the award of one-half the proceeds from the sale of the marital home. Because Husband owned the home prior to the marriage, he asserts it should not have been included in the marital estate. While the source of marital property is a factor to be considered by

7

the District Court, Watson, 739 P.2d at 954, it is not absolutely determinative. The court is not bound to restore the parties to their premarital status. In re Marriage of Keepers (Mont. 1984), 691 P.2d 810, 813, 41 St.Rep. 2163, 2167. Section 40-4-202(1), MCA (1985), provided in pertinent part:

> [I]n dividing property acquired prior to the marriage . . . the court shall consider those contributions of the other spouse to the marriage, including: (a) the non-monetary contribution of a homemaker; (b) the extent to which such contributions have facilitated the maintenance of this property; and (c) whether or not the property division serves as an alternative to maintenance arrangements.

Under this standard, prior acquired property may properly be included as part of the marital assets where contributors of the other spouse have, for example, facilitated maintenance of the property. In re Marriage of Snyder (Mont. 1986), 714 P.2d 556, 557, 43 St.Rep. 346, 348; In re Marriage of Jorgensen (1978), 180 Mont. 294, 299, 590 P.2d 606, 610. In the present case, the house in Plentywood was undisputably the property of the Husband prior to the marriage. In evaluating the facts, we note the District Court found the parties had accumulated several debts during their marriage, including debts on the family home. The record further indicates these debts to be directly related to the parties' joint business operations. Indeed, Husband admits money was borrowed against the home for the express purpose of investing in the businesses. Certainly, a division of the equity in the home, upon sale, is a fair means to compensate Wife for her contributions. We cannot say the District Court abused its discretion in including the home as part of the marital property.

Second, Husband disputes the lower court's exclusion of Wife's mineral interest as a marital asset. Husband alleges the mineral interest was fraudulently placed outside of the marital estate through a "sham" transfer. We find these allegations to be without basis. The record illustrates Wife transferred the mineral interest to her aunt and uncle in return for payment of various bills and expenses totalling over $1,500. A mineral deed transferring ownership was also presented to the court. No evidence, apart from Husband's own testimony, shows the transaction to be in bad faith. Accordingly, no abuse of discretion is evident.

## IV.

Husband's fourth allegation of error focuses on the award of maintenance. The District Court awarded Wife $200 per month for one year. Husband argues under § 40-4-203, MCA (1985), the court may only grant maintenance if two conditions are present: (1) the spouse seeking maintenance lacks sufficient property to provide for her needs; and (2) the spouse is unable to support herself through appropriate employment. Husband contends Wife's mineral interest would provide her with sufficient funds. Yet as we have already discussed, the District Court found the mineral interests to be outside the marital estate.

In determining whether maintenance should be awarded § 40-4-203(2), MCA (1985), requires the District Court look to a number of factors, including financial resources, marital standard of living, duration of marriage, and the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.

This Court will not substitute its judgment for that of the District Court. Instead, we must determine whether there

9

is substantial evidence to support the findings and conclusions of the District Court. In re Marriage of Schenck (Mont. 1984), 692 P.2d 6, 8, 41 St.Rep. 2137, 2139. We find several factors in the record which support the District Court's award. Affidavits indicated Mrs. Syljuberget was spending virtually every penny to support herself and her child. These expenses do not include rent, an inevitable expense once the marital home is sold. Equity in the home is minimal. Further, Wife was not awarded significant property, only her personal property. Mr. Syljuberget, on the other hand, was awarded all income-producing property. Given the facts as they are presented on the record, we ourselves may find the maintenance award slight. However, under the statutory factors discussed above, the award is just. We find no abuse of discretion.

## V.

Finally, Husband contests the District Court's award of one-half her attorney's fees. Husband claims he is without resources, even to pay his own attorneys.

Our standard of review on the payment of attorney's fees is whether the court abused its discretion. In re Marriage of Gallinger (Mont. 1986), 719 P.2d 777, 783, 43 St.Rep. 976, 984. Under § 40-4-110, MCA (1985), the trial court may order a party to pay the other party's fees after considering their respective financial resources. As discussed above, and encompassed in the court's findings, Wife is without funds to pay her attorney. Yet, the District Court found Husband to have sufficient resources.

Most supportive of the award is not the Husband's financial resources as is his conduct throughout the dissolution proceedings. The record is replete with evidence indicating a majority of fees were due solely to Husband's

10

lack of cooperation. Indications include demands for discovery, contempt proceedings for failure to pay child support, and an injunction from entering the family home. The lower court's discretion will not be disturbed if substantial evidence is found in the record to support the award. In re Marriage of Carr (1983), 205 Mont. 269, 667 P.2d 425. We find more than substantial evidence.

Affirmed on all issues.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices