No. 88-285

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

_____

IN RE THE MARRIAGE OF ROBERT A. POPP,

       Petitioner/Appellant and Cross Respondent,

  and

SUSAN (POPP) MARTIN,

       Respondent/Respondent and Cross Appellant,

_____

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable G. Todd Baugh, Judge Presiding.

COUNSEL OF RECORD:

    For Appellant:

        Stephen C. Moses, Moses Law Firm; Billings, Montana


    For Respondent:

        Allen Beck, Billings, Montana

_____

Submitted on Briefs:  December 16, 1988

Decided:    January 17, 1989


Filed  '89 JAN 17 AM 10 56
FILED
CLERK
MONTANA SUPREME COURT

_____
ED SMITH
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Robert Popp appeals a final judgment of the District Court of the Thirteenth Judicial District, Yellowstone County. He challenges the valuation and distribution of the marital estate. We affirm the judgment of the District Court.

Four issues are raised in this appeal:

1. Did the District Court improperly value the cattle?

2. Did the District Court err in including as a marital asset the monies spent by the husband to maintain himself and two of the parties' minor children?

3. Did the District Court err in including as a marital asset the value of the irrigation pipe?

4. Is the District Court attempting to punish the husband?

This is the second time this case has been before this Court. In the first trial, the District Court awarded sixty percent of the marital estate to the husband and forty percent to the wife. In re the Marriage of Popp (1983), 206 Mont. 415, 671 P.2d 24. In response to the wife's appeal of that judgment, this Court determined that the marital assets were improperly valued and the case was remanded for a rehearing on valuation and apportionment of the marital estate. On remand, the District Court used market values of the marital assets and ordered a fifty-fifty division of property, thereby increasing the wife's share from $84,197.50 to $153,433.90. The husband appeals that judgment. The wife has filed a cross-appeal which she asks this Court to dismiss if it is determined that the husband's assignments of error are without merit.

Did the District Court improperly value the cattle?

The District Court adopted a value of $450.00 per head for the parties' cows and $227.50 per head for the calves. The husband contends that there is insufficient evidence in the record to support this finding and that the court failed to indicate how it arrived at these figures.

At trial, both the husband and wife offered evidence of cattle values as of the stipulated date of September 1982. The husband offered a weekly livestock summary from September 17, 1982, which he contends supports his valuation of the calves at $200.00 per head. The wife offered documentation from cattle sales which took place in 1982 in Billings, Montana, at the Public Auction Yards. The February 1982 receipt indicates a sale of 34 mixed heifers in which the gross sales were $8,899.77, or $261.76 per head. Thus, the evidence offered by the parties supports a finding valuing the calves between $200.00 and $261.76 per head. We conclude that the District Court's value of $227.50 per head for the calves is supported by the evidence.

The husband also refers to the September livestock summary to support his valuation of the cows at $350.00 per head. The wife offered an April 1982 sales receipt from a sales yard which indicates a sale price for culled cows between $526.08 and $296.10 per head, with the average sale price of a culled cow at $283.46. While the District Court did not specifically refer to the wife's exhibit when making its finding regarding the value of the parties' cows, we hold that there is sufficient evidence in the record to support the District Court's valuation at $450.00 per head. While this figure is significantly higher than the husband's of-fered value at $350.00 per head, there was evidence indicat-ing the top value of the cows at over $500.00. This Court

will not set aside the lower court's finding, which is not clearly erroneous, merely because one party wishes to have its valuation figures adopted instead of those arrived at by the court.

## II

Did the District Court err in including as a marital asset the monies spent by the husband to maintain himself and two of the parties' minor children?

The District Court found that the sole source of monies deposited into the ranch account was a commercial account with Norwest Bank, and that the ranch account was used to pay for the expenses of the marital estate. The total indebtedness to Norwest Bank by virtue of the loans run through the ranch account as of September 1982 was $131,939.42. The parties agreed that the indebtedness, to the extent it represented money borrowed for the benefit of the marital estate, would be deducted from the gross marital estate to arrive at the net marital estate. The District Court found that $22,352.24 of the funds in the ranch account was spent by the husband for his own benefit. It concluded that those funds were to be treated as a distribution but were to be added back into the marital estate for purposes of determining the value of the gross marital estate. In its amended decree, the District Court stated that:

> . . . it is now apparent that there are some expenditures included in the $22,352.24 that represent a benefit to the marital estate and must now be backed out of that figure. In this category the court now finds it appropriate to include two-thirds of the groceries ($2,315.16), one-half of the utilities ($1,002.55), Jim Eastlick ($300.00), and two-thirds of the miscellaneous items ($457.76) for a total of $4,075.47 to be deducted.

4

Thus, a total of $18,278.77 was considered as personal expenses of the husband to be added back into the marital estate. On appeal, the husband contends that it was error for the court to include any amount of this money in the marital estate because the entire $22,352.24 was spent by him on living expenses for himself and two of the parties' minor children.

The District Court has far-reaching discretion in resolving property divisions and its judgment will not be altered unless a clear abuse of discretion is shown. In re Marriage of Watson (Mont. 1987), 739 P.2d 951, 954, 44 St.Rep. 1167, 1170. The husband now asks this Court to scrutinize the nature of the $22,352.24 in expenses as if the District Court had not done so. However, the court's findings indicate otherwise. It is clear from the District Court's detailed findings in the amended decree that the expenses which were not personal to the husband, but were expended on behalf of the marital estate, were considered separate and distinct and were treated as such. There is no evidence which would render the District Court's findings on this point clearly erroneous. We conclude that the court properly added $18,278.77 back into the marital estate to determine the value of the estate.

III

Did the District Court err in including as a marital asset the value of the irrigation pipe?

The husband argues that it was error for the District Court to independently value the ranch property's irrigation pipe and include it in the gross marital estate since its value was presumably included in the value of the irrigated ranch property. The District Court adopted as the law of the case the real property values established at the first trial which were approved by this Court. Those values were based

5

on appraisals which differentiated between irrigated land and dry land, the value of the irrigated land being significantly higher. At the first trial, the court did not independently value the pipe since it found that:

> . . . the pipe is not a separate and distinct item from the ranch in that it is an integral part of determining whether or not the ranch can be run with big fields as opposed to a multitude of smaller fields, and whether the land is more valuable as irrigated as opposed to less valuable as dry land crops.

At the rehearing, the irrigation pipe was valued independently of the real property at $6,379.00 and was included in the gross marital estate as personal property under "machinery."

The husband's argument is based on his contention that the ranch property could only be irrigated by irrigation pipe, so that the pipe should have no value independent of the irrigated land. However, this contention is not supported by the record. A report from one of the appraisers established that:

> Irrigation water is supplied by the Yellowstone Ditch Company. This farm has 18.34 shares of stock in this company. According to the company president, P. Yegen Jr. and Seth J. Kiber, one share allows the owner to one miner's inch of water which will irrigate 9.6 acres or a total in this case of 176.2 acres. The 1982 water cost is $5 per share. Delivery is by gravity ditch and the method of irrigation is flood. Stock water is supplied by the Yellowstone River, irrigation ditches, springs, and reservoirs. Domestic water is supplied by a well at the buildings. (Emphasis supplied).

Based on this evidence, we hold that it was not error for the District Court to independently value the irrigation pipe and to include it as personal property in the gross marital estate.

## IV

Is the District Court attempting to punish the husband?

It appears that the husband is dissatisfied with that portion of the decree which requires the ranch to be sold in the event that he cannot or would not pay to the wife her share of the net marital estate as scheduled. The decree requires that the ranch be listed for not less than $325,000 beginning in February of 1988, to be reduced in sale price by 5% twice a year until sold, and upon sale the proceeds shall first be distributed to the wife in the amount of $165,814.90. The husband argues that this arrangement is grossly unfair in light of a 40% reduction in value of the ranch property since 1982 due to drought conditions in Montana.

It appears that the husband is now seeking to have the ranch valued at a price other than the September 1982 values. We are reminded that September 1982 was stipulated by the parties as the date of inventory and valuation for all of the marital assets. All of the parties' evidence concerning real property valuation relates to that date. The husband made no attempt to argue valuation or withdraw from the stipulation until after the District Court entered its final decree in 1988. The District Court was merely acting upon the evidence before it as stipulated by the parties. We conclude that the husband's final assignment of error is without merit.

Because we find no merit in any of the husband's contentions, we will not address the wife's cross-appeal. The judgment is affirmed.

Justice

We Concur:

7

_J. A. Turnage_
Chief Justice

_L. C. Gulbrandson_

_John C. Sheehy_

_William E. Hunt Sr._
Justices

8