No. 93-372

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

IN RE THE MARRIAGE OF

DARCIA L. RAGER,

    Petitioner and Respondent,

  and

CHRISTOPHER A. RAGER,

    Respondent and Appellant.

APPEAL FROM:  District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Michael V. Sinclair; Coil & Sinclair, Bozeman,
Montana

    For Respondent:

        Jerrold L. Nye; Nye & Meyer, Billings, Montana

**FILED**

FEB 11 1994

Filed:  *Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on  Briefs:  October 21, 1993

          Decided:  February 11, 1994

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

Appellant Christopher A. Rager (Chris) appeals the Eighteenth Judicial District Court, Gallatin County, order compelling him to pay $252 per month in child support and $100 per month for medical, dental and optical expenses. We affirm.

Chris presents the following issues:

1. Did the District Court abuse its discretion in computing Chris' child support obligation?

2. Did the District Court err by declaring his daughter's surname "Worman?"

3. Did the District Court abuse its discretion by ordering Chris to pay Darcia L. Rager's attorney's fees and costs?

On April 18, 1991, Darcia Rager (Darcia) filed to dissolve her marriage to Chris, alleging that one child was born of the marriage, Karissa Lynn Jacque Worman (Karissa). Chris, in his response, did not dispute the child's last name, but he wanted the child's last name changed to Rager. Chris is Karissa's natural father.

On October 30, 1992, the attorneys and District Court signed a pretrial order, which resolved all issues except: 1) the amount Chris would pay for child support; 2) who would pay for Karissa's medical, optical and dental expenses; and 3) the payment of attorney's fees by either party. The pretrial order stated that the child's name was Karissa L. J. Rager, instead of Karissa L. J. Worman.

2

The District Court ordered that discovery be completed by January 15, 1993, and set the trial date for February 19, 1993. Chris moved for a continuance and the District Court denied his motion on February 8, 1993.

Chris failed to appear at the trial on February 19, 1993. He also failed to provide Darcia with discovery before that date. Darcia appeared at the hearing and submitted evidence of her income. She testified that her child's name was Karissa L. J. Worman. Chris' attorney argued that the pretrial order established that the child's last name was Rager. The court acknowledged the pretrial order, but determined that the child's legal name was Worman--the name which appeared on the child's birth certificate.

Because Chris failed to appear and did not comply with discovery, the court scheduled a second hearing for April 5, 1993. The court indicated that Chris would pay Darcia's attorney's fees and attorney travel expenses for the April 5th hearing.

Chris finally appeared at the April 5, 1993, hearing and gave testimony concerning his income. Chris' girlfriend and bookkeeper, Judy Adams (Judy), also testified about his income.

After hearing the evidence, the District Court determined that Chris had an earning capacity of $20,000 a year, while Darcia's earning capacity was $15,000 a year. The court completed a child support guideline worksheet and ordered Chris to pay $252 per month for child support and $100 per month for Karissa's medical, dental and optical expenses. The court also ordered Chris to pay Darcia's attorney's fees and travel costs of $1,085 for the April 5th

3

hearing. Chris appeals.

Initially, we note that a presumption exists in favor of the district court's child support computation and we will uphold that computation unless the district court abuses its discretion. In re Marriage of Kukes (1993), 258 Mont. 324, 328, 852 P.2d 655, 657. Further, the court's factual findings will be affirmed if they are supported by substantial evidence. In re Marriage of Fesolowitz (1993), 258 Mont. 380, 387, 852 P.2d 658, 662.

I

Did the District Court abuse its discretion in computing Chris' child support obligation?

Chris maintains that the District Court inappropriately included money which Judy had loaned to him in his income calculation. He contends that Judy loaned his business more than $20,000 and that amount explains the $20,000 difference between his cash deposits of $78,000 and his business expenses of $58,000. He argues that § 46.30.1508(2), A.R.M., prohibited the court from considering the financial resources which Judy contributed to his business when it determined his earning capacity. Chris contends that he sustained an $8,000 loss in 1992. Thus, he concludes that he should not pay any child support to Darcia until his income stabilizes. The record, however, negates his argument.

At trial, Chris refused to testify about his income during the first three months of 1993. Further, he would not testify about his business income and expenses for 1992. Even though Chris testified that he made $75 a day in his outfitting business, he

4

never indicated how many days he spent working in the business and, thus, the court could not accurately determine his income from outfitting.

Judy handled the bookkeeping for Chris' drywall business. Since Chris claimed to have no personal knowledge of the financial records, Judy was the only one who could testify as to his income and expenses. Judy testified about the finances and she also testified that she loaned money to Chris.

The District Court found that Chris could not provide the court with a reasonable calculation of his income or earning potential. In short, the District Court could not accurately determine Chris' income from his or Judy's testimony. For that reason the court was forced to rely on the exhibits (Chris' financial records) to determine his income. The District Court found that Chris' business deposits were greater than $78,000, while his business expenses were $58,000. The court then found that "[f]rom his meager records it would seem that [Chris] has $20,000 to live on."

After a careful review of the record, we conclude that the District Court's findings are supported by substantial evidence. The court did not abuse its discretion in computing Chris' child support obligation. We hold that the District Court properly computed his child support obligation.

II

Did the District Court err by declaring his daughter's surname "Worman?"

5

The pretrial order in this case states that "[t]he child's surname will remain Rager." This order was signed by the District Court Judge and both parties' attorneys. However, it was later discovered that the child's legal surname was never Rager, but was, in fact, Worman. Based on that fact, the District Court found, contrary to the pretrial order, that the minor child's surname was Worman.

We recognize that the pretrial order is used to "prevent surprise, [narrow the] issues and permit counsel to prepare for trial on the basis of the pretrial order." Bache v. Gilden (1992), 252 Mont. 178, 182, 827 P.2d 817, 819. In this case, the child's name on the birth certificate is Karissa Lynn Jacque Worman. This name is the child's legal name, and remains so for all purposes unless it is changed by adoption, through a statutory petition for a name change, or by other legal means. See, § 40-8-101 et seq., MCA; § 27-31-101 et seq., MCA; In the Matter of the Change of Name of Iverson (1990), 241 Mont. 140, 786 P.2d 1; In re Marriage of Firman (1980), 187 Mont. 465, 610 P.2d 178. Chris never petitioned for a name change nor requested such a change through other legal means. Therefore, because the pretrial order contained a legal and factual error, the District Court was well within its discretion to modify the pretrial order to that extent.

This holding should not be read as allowing parties to renege on the stipulations and agreements made in a pretrial order. However, when there is a mistake of fact or law contained in the pretrial order, the District Court must be allowed the discretion

6

to correct that error.

### III

Did the District Court abuse its discretion by ordering Chris to pay Darcia's attorney's fees and costs?

Chris argues that the District Court erred by ordering him to pay Darcia's attorney's fees and costs. While the District Court's findings and conclusions do not indicate the basis for awarding attorney's fees, we conclude that two statutory provisions support awarding attorney's fees and costs in this case.

First, § 40-4-110, MCA, requires the district court to consider the "financial resources of both parties" before it orders a party to pay the reasonable costs and attorney's fees of the other party. In re Marriage of Syljuberget (1988), 234 Mont. 178, 187, 763 P.2d 323, 328. In Syljuberget, we upheld an award of attorney's fees when the husband's failure to cooperate caused the wife to incur additional attorney's fees. 763 P.2d at 328. We concluded that the district court correctly considered the financial resources of both parties. Syljuberget, 763 P.2d at 328.

Similarly, here, Chris failed to appear at the first hearing and caused Darcia to incur additional and unnecessary attorney's fees. Although the District Court did not specifically find that Chris could afford to pay Darcia's attorney's fees and costs, the court did consider the financial resources of both Darcia and Chris. In determining child support, the court found that Chris' earning capacity was $20,000, while Darcia's was $15,000. Thus, the court considered the financial resources of the parties before

7

it ordered Chris to pay Darcia's attorney's fees and costs.

Second, § 37-61-421, MCA, permits the district court to award attorney's fees, costs and expenses against "[a]n attorney or party . . . who . . . multiplies the proceedings in any case unreasonably and vexatiously . . . ." See Tigart v. Thompson (1990), 244 Mont. 156, 159-60, 796 P.2d 582, 583-85. In the present case, on October 30, 1992, the court scheduled the trial date for February 19, 1993. On February 4, 1993, Chris moved the court to continue the trial date. The court denied his motion on February 8, 1993, stating that "[t]his matter has been set [for trial] since October 30, 1992, allowing [Chris] adequate time to adjust his schedule accordingly."

Thus, Chris knew for four and one-half months that the hearing was scheduled for February 19, 1993, and that he was required to attend the hearing on that date. Despite the District Court's order denying his motion to continue, Chris failed to appear at the February 19th hearing.

He also refused to provide the court and Darcia with his discovery responses (financial evidence). As a result of Chris' failure to appear and his failure to provide financial evidence, the court could not render a permanent child support computation. The District Court had to schedule a second hearing for April 5th.

Chris' conduct not only showed disregard for the court's proceedings, but his conduct was also unreasonable and vexatious. Further, his conduct multiplied the litigation by necessitating a second hearing.

8

We hold that the District Court properly considered the parties' financial resources as required by § 40-4-110, MCA. The court also could have relied on § 37-61-421, MCA, to support its award of attorney's fees and costs. We uphold the District Court's determination that Chris pay Darcia's attorney's fees and costs.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

February 11, 1994

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Michael V. Sinclair, Esq.
Coil & Sinclair
125 West Mendenhall
Bozeman, MT  59715

Jerrold L. Nye
Nye & Meyer
3317 Third Ave. No.
Billings, MT  59101

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy