JUSTICE McDONOUGH
delivered the Opinion of the Court.
*141 Karon Lynn Hepp filed a petition for name change of James Joseph Iverson, a minor child, on May 5, 1989. A hearing on the matter was held and on August 7, 1989, the District Court for the Eighth Judicial District, Cascade County, dismissed the petition. We affirm.
The sole issue on appeal is:
Whether the District Court abused its discretion when it denied Karon Hepp’s petition for change of name.
On May 26,1988, Karon Hepp (Karon) gave birth to James Joseph Iverson (J.I.). The natural father of J.I. is Ronald Iverson (Ronald). Although Karon and Ronald were not married at the time of J.I.’s birth, both acknowledge that Ronald is the biological father and this fact is recorded on J.I.’s birth certificate.
According to Karon, following the birth of J.I., Ronald promised to marry her. As a result of this promise, Karon gave J.I. Ronald’s surname. J.L’s first and middle names were taken from his two grandfathers. Eventually the engagement fell through and because Karon felt that Ronald had not paid adequate attention to J.I., she filed a petition to change J.I.’s name to Joseph Scott Hepp.
In compliance with Montana law, Ronald was served and interested parties were notified through publication with a local newspaper. A trial was held on August 7,1989, and the District Court found that changing J.I.’s name was not in his best interest. Accordingly, the petition was dismissed. This appeal followed.
A change of name proceeding is statutory and is governed by § 27-31-101, MCA, et seq. Unfortunately, these statutes do not set forth with any specificity the acceptable reasons for allowing the change of name of a person. However, in two recent decisions, we have held, that in contested cases when one parent seeks to change his or her child’s name, the court shall determine whether the best interest of the child will be served. If the petitioner in such cases fails to make such a showing, it is proper for the district court to dismiss the petition. In re Marriage of Firman (1980), 187 Mont. 465, 610 P.2d 178; In re Marriage of Overton (1983), 207 Mont. 292, 674 P.2d 1089.
Review of a district court’s ruling in these matters is very narrow. A lower court’s decision regarding the best interest of the child will not be overturned on appeal unless there is a clear abuse of discretion. Allen v. Allen (1978), 175 Mont. 527, 575 P.2d 74. In Overton, we said:
“We will not substitute our judgment for that of the trier of fact, but rather will only consider whether substantial credible evidence *142 supports the findings and conclusions. These findings will not be overturned by this Court unless there is a clear preponderance of the evidence against them. We will view the evidence in a light most favorable to the prevailing party, recognizing that substantial evidence may be weak or conflicting with other evidence, yet still support the findings.” (Citations omitted.) 674 P.2d at 1090.
In light of these policies, we must review the decision of the District Court in a light most favorable to Ronald. If there is not a clear showing of abuse of discretion, the judgment of the District Court must stand.
The lower court held that Karon’s reasons for changing J.I.’s name were not persuasive and were not in the best interests of the child. It based this conclusion upon substantial, albeit conflicting evidence.
Karon maintains that she gave J.I. Ronald’s surname because of his promise to marry her. She argues that this promise was breached, and that therefore she should be allowed to change the child’s surname to her own. She further argues that Ronald has not kept in contact with J.I. According to her petition, Ronald has not visited with J.I. since October of 1988. Accordingly, he has not contributed to the daily care and upbringing of the child.
The evidence presented by Ronald, however, tends to rebut Karon’s contentions. Ronald acted pro se throughout the lower court proceeding. He did not therefore file any memoranda or petitions. However, he did testify upon his own behalf at the lower court hearing. His testimony revealed that he had in fact attempted to maintain contact with J.I. since his break up with Karon. He testified that he had attempted to call Karon on numerous occasions in order to visit with his child, that each time he called, she hung up on him. He also stated that he has spoken with E. Lee LeVeque, a local attorney, in an attempt to gain visitation rights. Further, it is uncontested that he has continually paid child support. At this point he is paying $100.00 a month to the Department of Revenue, who passes the money on to Karon. Before J.I. was born, Ronald paid $1,007.60 directly to Karon for pregnancy and other child rearing expenditures.
The District Court took all of this evidence into consideration and determined that the proposed name change would not be in J.I.’s best interest. We note that most of this evidence is uncontradicted. Perhaps the only point of disagreement between Ronald and Karon is the extent of his visitation with J.I. Karon maintains that he has not maintained contact with the child; however, as we stated earlier, *143 Ronald argues that he has attempted to remain in contact, but his efforts have been thwarted. The District Court viewed the testimony of both parties and the parties themselves. Based upon its perceptions of this testimony, it held that J.L’s name should not be changed. There is substantial evidence to support this conclusion and it is not arbitrary or capricious.
Karon desired to change J.I.’s name in a manner which would not only dispense with the child’s paternal surname, but also with his paternal grandfather’s first name. The lower court found such a result is not warranted in light of the facts that Ronald has acknowledged paternity, is paying child support and is seeking a court order granting him visitation rights. The lower court did not clearly abuse its discretion and we must therefore affirm.
CHIEF JUSTICE TURNAGE and JUSTICES HARRISON and SHEEHY concur.