**In the Interest of H.S.B., a child.**

No. 14–10–00659–CV.

Court of Appeals of Texas, Houston (14th Dist.).

March 1, 2011.

Roy Patrick Norris, Houston, for Appellant.

Stephen C. Parten, Spring, for Appellee.

Panel consists of Justices ANDERSON, SEYMORE, and McCALLY.

## OPINION

SHARON McCALLY, Justice.

Appellant Amber Brittain appeals from an order adjudicating parentage, in which the court ordered the surname of a child born to Brittain and appellee David Chalifoux to be changed from Brittain to Chalifoux. In three issues, Brittain argues that the trial court impermissibly considered "tradition" evidence, and the evidence is legally and factually insufficient to support the trial court's findings that the name change would be in the child's best interest and that there was good cause for the name change. We reverse the portion of the trial court's order granting the name change and render judgment that the child's surname shall remain Brittain.

### BACKGROUND

Brittain and Chalifoux were coworkers and friends when they had a brief romantic relationship that resulted in the conception and birth of their son, H.S.B. They did not marry, and Brittain gave birth to the child on May 25, 2009. The child was given his mother's surname. A few weeks after the birth, Chalifoux filed a petition to adjudicate parentage to establish his paternal rights to the child and his support obligations. Brittain and Chalifoux entered mediation and agreed on nearly every term, including that the parents would be joint managing conservators, Brittain would have the exclusive right to designate the child's residence, and Chalifoux would have certain visitation rights and financial support obligations. The single issue they could not agree upon was the surname of the child.

At a bench trial on March 15, 2010, both Chalifoux and Brittain testified on the name change issue. Chalifoux's direct testimony, in full, was as follows:

Q. Are you asking the Court to change this child's name to [H.S.] Chalifoux?

A. Yes.

Q. You think that's in the best interest of your child?

A. Yes.

Q. And you filed this case, didn't you?

A. Yes.

Q. And you pursued this diligently so that you could have a relationship with your child?

A. Yes.

Q. It wasn't always easy, was it?

A. No, it was not.

Q. But you were determined to be involved in your child's life; is that correct?

A. Yes.

Q. And you think it's in the best interest that he have your last name; is that correct?

A. Yes.

Q. And is it—is it your belief that he should have your last name because that is the tradition in this country?

A. Yes.

Q. And also because you think it will be better for your child?

A. Yes.

On cross, he could not provide a specific reason for changing the child's name:

Q. Do you have any reason why keeping the name Brittain would be detrimental to the child?

A. It's—he should have my last name.

Q. Do you have any other reason why it should be changed to Chalifoux.

A. No, I do not.

It was uncontested that Chalifoux had agreed to help financially support the child and reimburse Brittain for all prenatal and postnatal expenses and insurance costs. Chalifoux also testified that it had been difficult to bond with his child during supervised visits, but he had made an effort to do so.

Brittain testified that she has another son who lives with her, the other son is older than H.S.B. by less than three years, and he has the Brittain surname. Both of her sons have first names that end with the syllable "son," which she chose to encourage a sibling bond. Because of their closeness in age, Brittain explained that the boys would at times attend the same school. She worried that it would alienate H.S.B. to have a different name from his brother while they attended the same schools, lived in the same house, and attended the same church. She was concerned that it would lead to social awkwardness because the brothers will be together often at school and church. Brittain testified "from personal experience" that it is embarrassing and awkward to grow up with a different last name from one's siblings because the child is forced to explain to other children what two adults did to put the child in that situation.

She further testified that she would not change her surname if she ever chose to get married in the future, and she would not change either of her sons' names. She explained that her reasons for wanting to keep her child's last name was not to alienate Chalifoux from his son—Chalifoux was the first person Brittain told about the pregnancy, he attended several doctor's visits while she was pregnant, and she called him to the hospital on the day their son was born.

Brittain also testified about tradition. She said that she thought it was more traditional for a child to have the same surname as his or her siblings and the members of the same household. She acknowledged that it is traditional for children to bear their father's surname, but usually in that situation the parents have been married or the father is living in the same house.

Finally, the trial court allowed testimony about alleged misconduct by Chalifoux, over his objection. Brittain testified that Chalifoux had skipped, arrived late, or departed early from a number of visitation sessions with the child. He would pay

medical bills but did not always ask about the welfare of the child. There was also evidence that the mediated settlement agreement included an unpaid amount of $4,200 for past support.

On May 3, 2010, the court ordered that the child's surname would be changed to Chalifoux, and the court later entered findings of fact and conclusions of law in which the court found that the name change would be in the best interest of the child.[1] The court also found that Chalifoux "has maintained a significant relationship with the child." This appeal followed.

### ANALYSIS

In her first issue, Brittain argues that the trial court impermissibly considered evidence of tradition. In her second and third issues, Brittain challenges the sufficiency of the evidence for the trial court's findings that changing the child's name would be in the child's best interest and that Chalifoux had shown good cause for the name change. We hold that a court may consider evidence of tradition when determining if it is in a child's best interest to order a name change, but tradition

alone is an insufficient ground for changing a child's name. We also hold that the trial court abused its discretion in ordering the name change because there was legally insufficient evidence to support a finding that changing the name was in the child's best interest.[2]

### A. Standard of Review

■ We review for an abuse of discretion a trial court's decision to change the name of a minor child. *In re S.M.V.*, 287 S.W.3d 435, 446 (Tex.App.-Dallas 2009, no pet); *In re A.C.B.*, No. 14–99–01379–CV, 2001 WL 931567, at *1 (Tex.App.-Houston [14th Dist.] Aug. 16, 2001, no pet.) (mem. op., not designated for publication); *see Newman v. King*, 433 S.W.2d 420, 424 (Tex.1968). A trial court abuses its discretion when its ruling is arbitrary, unreasonable, or without reference to guiding rules or legal principles. *London v. London*, 94 S.W.3d 139, 143 (Tex.App.-Houston [14th Dist.] 2002, no pet.).

■ We have explained that "insufficient evidence" is not an independent point of error when the standard of review is abuse of discretion, and the sufficiency of

---

1. The court initially ruled from the bench that the child's surname could be hyphenated as Brittain-Chalifoux, but the final order included only the surname Chalifoux.

2. The trial court in this case only made the express finding that changing the child's surname to Chalifoux would be in his best interest—there was no mention of good cause. Brittain concedes that the trial court's best interest finding incorporates a finding on good cause. Although "best interest" is the applicable standard when a person seeks to change the name of a child generally, TEX. FAM.CODE ANN. § 45.004(a)(1) (West Supp. 2009), in a suit affecting the parent-child relationship, a child's name may be changed only if the requesting party shows "good cause." TEX. FAM.CODE ANN. § 160.636(e) (West Supp. 2009); *see also* TEX. FAM.CODE ANN. § 160.002 (West 2008) (explaining that a provision in

this chapter prevails over conflicting law). The Fort Worth and Dallas Courts of Appeals have held that "good cause" and "best interest" are distinct concepts, and a parent seeking to change a child's name under section 160.636(e) must establish both good cause *and* best interest. *See In re S.M.V.*, 287 S.W.3d 435, 447 (Tex.App.-Dallas 2009, no pet.); *In re M.C.F.*, 121 S.W.3d 891, 894–95 (Tex.App.-Fort Worth 2003, no pet.). Because the best interest of a child will necessarily be considered a good cause for changing the child's name, we will evaluate the sufficiency of the evidence for the best interest finding and presume that the trial court found good cause on the same ground. *See In re S.M.V.*, 287 S.W.3d at 447 (citing TEX.R. CIV. P. 299). Chalifoux has never argued that there is a good cause for the name change other than it would be in the child's best interest.

the evidence is merely a factor to consider. *Id.* at 143–44. For a court to act within its discretion to change a child's name, however, the record must contain some evidence of a substantial and probative character to support the trial court's decision. *Zieba v. Martin,* 928 S.W.2d 782, 787 (Tex.App.-Houston [14th Dist.] 1996, no writ). Accordingly, the abuse of discretion standard requires a two-pronged analysis: (1) whether the trial court had sufficient information upon which to exercise its discretion; and (2) whether the trial court erred in applying its discretion under the appropriate legal authorities. *In re S.M.V.,* 287 S.W.3d at 446; *In re M.C.F.,* 121 S.W.3d 891, 895 (Tex.App.-Fort Worth 2003, no pet.); *see also Evans v. Evans,* 14 S.W.3d 343, 346 (Tex.App.-Houston [14th Dist.] 2000, no pet.) (reviewing the trial court's division of property with similar two-pronged analysis).

A party's challenge to the sufficiency of the evidence when the standard of review is abuse of discretion, as in this case, implicates the first of the two inquiries. *In re M.C.F.,* 121 S.W.3d at 895. Under a legal sufficiency review, we must determine whether the evidence would enable a reasonable and fair-minded person to reach the finding under review. *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex. 2005). We credit favorable evidence if reasonable fact finders could and disregard contrary evidence unless reasonable fact finders could not. *Id.* A legal sufficiency challenge must be sustained when

(1) the record shows a complete absence of evidence of a vital fact, (2) the court is barred from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of the vital fact. *Id.* at 810; *Wiese v. Pro Am Servs., Inc.,* 317 S.W.3d 857, 860 (Tex. App.-Houston [14th Dist.] 2010, no pet.).[3]

## B. Name Changes for Minor Children

The use of a single surname is a well-entrenched custom in the United States, emanating from Anglo–Saxon patriarchal traditions.[4] This custom is perhaps incapable of being gender-neutral for a child born out of wedlock, regardless of whether the paternal or maternal surname is selected for the child. For example, Chalifoux argued in the trial court that it is tradition in this country for a child to take his or her father's surname. This custom developed from various patriarchal notions, including that a man was the head of a family, a woman had no legal rights separate from that of her husband's, and only legitimate children with their father's surname could inherit property. *See, e.g., Gubernat v. Deremer,* 140 N.J. 120, 657 A.2d 856, 862–63 (1995). Brittain testified that it is more traditional for a child born out of wedlock to take the surname of the custodial parent. *See In re Guthrie,* 45 S.W.3d 719, 724 (Tex.App.-Dallas 2001, pet. denied) (noting the custom of non-marital children taking the mother's surname).[5] This custom developed from the

---

3. Because we conclude that the evidence is legally insufficient in this case, we need not address the standard for factual sufficiency. Further, Justice Owen has suggested that a factual sufficiency review is incompatible with the abuse of discretion standard. *See In re Doe 2,* 19 S.W.3d 278, 289 (Tex.2000) (Owen, J., concurring), *discussed in* A. Michelle May, *Family Law Appeals Distinguished,* 15 App. Advoc., no. 4, 2003 at 12, 13.

4. For a discussion of the history of surnames and gender equality, see, for example, *Gubernat v. Deremer,* 140 N.J. 120, 657 A.2d 856, 859–67 (1995), *Doherty v. Wizner,* 210 Or.App. 315, 150 P.3d 456, 457–59 (2006), and the authorities cited therein.

5. Under the common law and before the nineteenth century in the United States, children born out of wedlock were generally considered "the child of no one" and received no

view of a woman as the "natural guardian" of a child; yet it "was not the result of a right or privilege extended to women, but instead was incidental to the societally imposed duty on her to care for the child." *Gubernat*, 657 A.2d at 864.[6] The rationales for both of these naming traditions have been eradicated under modern law: our society values gender equality, especially in family law disputes when the welfare of a child is concerned. *See id.* at 865; *In re Guthrie*, 45 S.W.3d at 724; *see also* TEX. CONST. art. I, § 3a ("Equality under the law shall not be denied or abridged because of sex...."); TEX. FAM. CODE ANN. § 153.003 (West 2008) (prohibiting preference based on sex in custody determination). If we were to recognize either tradition as controlling, we would be sanctioning a gender bias in the naming of children. This we cannot do. *See In re Guthrie*, 45 S.W.3d at 724.

█ But by the very nature of our legal system, we must place a burden of persuasion on parties seeking to do some action.

Such a system inherently favors custom and tradition when a parent seeks to change the name of a child because parents often follow custom and tradition when choosing the original surname—most children born out of wedlock receive the mother's surname, and most children born during marriage receive the father's surname.[7] In Texas, courts have held that a child's name should not be changed unless the party seeking the change shows that the original name is detrimental to the child. *In re A.C.B.*, 2001 WL 931567, at *1; *In re J.K.*, 922 S.W.2d 220, 222 (Tex. App.-San Antonio 1996, no writ). "The power to change the name of a minor child is exercised reluctantly and only when necessitated by the substantial welfare of the child." *In re J.K.*, 922 S.W.2d at 222; *accord Newman*, 433 S.W.2d at 423; *In re D.A.*, 307 S.W.3d 556, 564 (Tex.App.-Dallas 2010, no pet); *In re M.C.F.*, 121 S.W.3d at 897. The child's best interest is the primary concern—not the interests of the parents. *In re S.M.V.*, 287 S.W.3d at 449;

---

parental surname. *Gubernat*, 657 A.2d at 862, 864. The child had no mother or father recognized by law and could not inherit property; thus, there was no reason to assign the child a surname. *Id.* at 862.

**6.** *See also Schroeder v. Broadfoot*, 142 Md. App. 569, 790 A.2d 773, 778 (2002) ("The custom of giving children born out of wedlock their mother's surnames likewise derived from primogeniture and women's secondary status in the legal and social systems.").

**7.** *See, e.g.*, Beverly S. Seng *Like Father, Like Child: The Rights of Parents in Their Children's Surnames*, 70 VA. L. REV. 1303, 1305 (1984) (noting that a presumption in favor of the status quo favors fathers when children are born during marriage because most American children born during marriage take their father's surname); Merle H. Weiner, *"We Are Family": Valuing Associationalism in Disputes over Children's Surnames*, 75 N.C. L. REV. 1625, 1724 (1997) ("Children of unmarried mothers customarily take their moth-

ers' surnames, although many non-marital children take their fathers' surnames." (footnote omitted)); *see also In re Wilson*, 162 Vt. 281, 648 A.2d 648, 650 (1994) (reasoning that the rule of maintaining the status quo unless one parent can show that a change would be in the child's best interest "does not inherently reflect gender bias merely because the parents' original naming choice followed traditional custom"); Priscilla Ruth MacDougall, *The Right of Women to Name Their Children*, 3 LAW & INEQ. 91, 116 (1985) ("As custodial parents of nonmarital children, women, however, usually maintain their right to determine their children's names at least when the children have been given a non-paternal name on their birth certificates or in early infancy."); Weiner, *supra*, at 1631 (concluding that all three of the modern approaches—a presumption favoring the status quo, the custodial parent presumption, and the best interest test—reflect men's conceptions of surnames, and thus, "none of the standards for resolving name change disputes have totally eliminated the law's patronymic bias").

*see In re J.K.*, 922 S.W.2d at 222.[8]

Neither the Texas Supreme Court nor this court has identified what factors should be considered when determining if a name change is in a child's best interest. But appellate courts in Texas and other jurisdictions have identified many such nonexclusive factors. We synthesize the following factors as most relevant in the majority of cases:

   (1) the name that would best avoid anxiety, embarrassment, inconvenience, confusion, or disruption for the child, which may include consideration of parental misconduct and the degree of community respect (or disrespect) associated with the name,

   (2) the name that would best help the child's associational identity within a family unit, which may include whether a change in name would positively or negatively affect the bond between the child and either parent or the parents' families,

   (3) assurances by the parent whose surname the child will bear that the parent will not change his or her surname at a later time,

   (4) the length of time the child has used one surname and the level of identity the child has with the surname,

   (5) the child's preference, along with the age and maturity of the child, and

   (6) whether either parent is motivated by concerns other than the child's best interest—for example, an attempt to alienate the child from the other parent.

*See, e.g., Scoggins v. Treviño,* 200 S.W.3d 832, 837 (Tex.App.-Corpus Christi 2006, no

pet.); *In re M.C.F.,* 121 S.W.3d at 897–98; *In re Guthrie,* 45 S.W.3d at 725; *see also Gubernat,* 657 A.2d at 867–68; Lisa Kelly, *Divining the Deep and Inscrutable: Toward a Gender–Neutral, Child–Centric Approach to Child Name Change Proceedings,* 99 W. Va. L. Rev. 1, 57–59 (1996); Weiner, *supra,* at 1710–12.

   ■ The relative importance of these factors, and other possible factors, will depend on the unique facts and circumstances of each case. *See In re Guthrie,* 45 S.W.3d at 726. We draw guidance on these factors primarily from the Dallas Court's opinion in *In re Guthrie.* However, we specifically reject three factors previously enunciated by other courts of appeals. First, in *In re Guthrie,* the court determined that the embarrassment or inconvenience of the custodial parent was a factor, *id.* at 725, and in *In re M.C.F.,* the Fort Worth Court considered the "embarrassment, inconvenience, or confusion for the custodial parent" without considering the potential feelings of the child. *See* 121 S.W.3d at 897. We find such considerations have no bearing on whether a name change is in the *child's* best interest, and they inappropriately shift the inquiry to the parents' interests.

   ■ We also abandon both the factor regarding the delay in requesting or objecting to a name change and the factor that considers a parent's financial support. *See In re M.C.F.,* 121 S.W.3d at 897–98; *In re Guthrie,* 45 S.W.3d at 725. These factors have no implications for the best interest of a child. They serve to reward or punish parents for their conduct unre-

---

**8.** *See also Newman,* 433 S.W.2d at 423 ("[T]he basic consideration in a proceeding of this character is the best interest of the child. It is made so by [statute], and it would be so in any event in the absence of a restraining statute."); 57 Am.Jur.2d *Name* § 46 (2001) ("[T]he issue is not whether it is in the best

interest of the child to have the surname of the mother or father, but rather, whether the interest of the child will be promoted substantially by *changing* his or her surname." (emphasis added)); 65 C.J.S. *Names* § 24 (Westlaw Supp. 2010) (same).

lated to the name change. Although it is surely in a child's best interest to have involved parents and to receive financial support, our focus is whether a *name change* is in the child's best interest. Consideration of a parent's financial support is generally irrelevant to whether a name change is in the child's best interest; it merely gives a noncustodial parent an increased naming right in exchange for something that the parent is already required to do. We concur with those courts and commentators that find no significant relationship between support payments and the surname of a child.[9] Further, a child's best interest may actually be disserved by a policy that considers a child's name to be the quid pro quo for accepting legal responsibility.

■ Although we adopt the view that tradition or custom alone may not override the best interest of a child, *see In re Guthrie*, 45 S.W.3d at 724, we cannot ignore the reality that tradition and custom are often implicitly considered through some of the factors used to determine a child's best interest. For example, tradition and custom may help determine which name would best avoid anxiety, embarrassment, or confusion for the child. *See Huffman v. Fisher*, 337 Ark. 58, 987 S.W.2d 269, 275 (1999) (noting that custom is not one of the explicit factors, but reasoning that "such evidence may be relevant in determining whether the child may experience difficulties, harassment, or embarrassment from bearing a particular surname"). Another example is the tradition of associating a child with the level of community respect or disrespect affiliated with a parent's surname. Although the practice of "corruption of blood"[10] is un-

---

**9.** *See In re G.L.A*, 430 N.E.2d 433, 434 (Ind. App.1982) ("[T]he trial court indulged an erroneous presumption that, absent extreme circumstances, a child should share the surname of its biological father as long as the father is contributing to its support. This presumption is incorrect because it ignores the proper standard, that of whether the change is in the best interest of the child."); *In re Iverson*, 241 Mont. 140, 786 P.2d 1, 3 (1990) (Barz, J., dissenting) (reasoning that consideration of the father's support payments in determining whether the child's name should be changed "do[es] not even touch upon the child's best interest"); *Gubernat*, 657 A.2d at 865 (noting the early American theory that "man owned what he paid for, and could put his name on everything for which he provided money"; omitting from the list of best interest factors the parents' financial support (quotation omitted)); Seng, *supra*, at 1330–34 (discussing the practice of some courts to condition naming rights on a father's financial support and arguing that courts "should not reinforce the child-as-chattel mentality by making the child's name a piece of property to be bargained over"); *see also, e.g., In re Marriage of Schiffman*, 28 Cal.3d 640, 169 Cal.Rptr. 918, 620 P.2d 579, 583 (1980) (omitting from list of best interest factors the parents' financial support); *In re*

*Saxton*, 309 N.W.2d 298, 301 (Minn.1981) (same); *Bobo v. Jewell*, 38 Ohio St.3d 330, 528 N.E.2d 180, 185 (1988) (same); *Barabas v. Rogers*, 868 S.W.2d 283, 287 (Tenn.App. 1993) (same); *Hamby v. Jacobson*, 769 P.2d 273, 278 (Utah App.1989) (same); *Daves v. Nastos*, 105 Wash.2d 24, 711 P.2d 314, 318 (1985) (same); MacDougall, *supra*, at 140 ("Although today most judges would deny that fathers can purchase possessory rights in their children, courts continue to connect fathers' naming prerogatives with the duty to support children, whether or not the fathers actually fulfill this duty."); *cf.* Tex. Fam.Code Ann. § 153.001(b) (West 2008) ("A court may not render an order that conditions the right of a conservator to possession of or access to a child on the payment of child support."). *But see, e.g., In re Harris*, 160 W.Va. 422, 236 S.E.2d 426, 427 (1977) ("The weight of authority appears to be that absent extreme circumstances a father who exercises his parental rights has a protectable interest in his children bearing his surname and this interest is one quid pro quo of his reciprocal obligation of support and maintenance.").

**10.** "Simply stated, the corruption of blood principle is the label given to the act of punishing a child for the illegal or immoral be-

constitutional,[11] the community-respect factor recognizes that society often blames children for the conduct of their parents.[12] Because a best interest determination is a fact-specific inquiry that requires courts to consider all relevant circumstances, *see In re Doe 2*, 19 S.W.3d at 282, evidence of tradition and custom should not be categorically excluded if it would aid a court in determining a child's best interest.

### 1. Anxiety, embarrassment, inconvenience, confusion, disruption, etc.

Here, Chalifoux testified that he wanted his child to bear his surname because it was tradition, but this testimony was unsupported by any explanation of how using his surname would be in the child's best interest. There was no attempt to link tradition with any factors relevant to the child's best interest—Chalifoux offered no evidence that the Chalifoux surname would be better than the Brittain surname to avoid anxiety, embarrassment, confusion, inconvenience, or disruption for the child. To the contrary, Brittain testified from personal experience that it would be less embarrassing for the child to have the same surname as his brother.

Accordingly, Chalifoux's testimony about tradition was no evidence of best interest. Tradition, standing alone, cannot justify changing a child's name. *See In re Guthrie*, 45 S.W.3d at 724; *see also Nohavitza v. Toman*, No. A14–94–00235–CV, 1994 WL 699067, at *1 (Tex.App.-Houston [14th Dist.] Dec. 15, 1994, no writ) (not designated for publication) (holding that the trial court did not abuse its discretion in refusing to change the child's surname from the mother's to the father's even though "having the same name may be more traditional and might encourage the relationship between father and daughter," and the father testified about the need to avoid public confusion and embarrassment).

### 2. Identity within a family unit and parental bonds

Chalifoux presented no evidence that a name change would help the child identify with a family unit or further the bond between the child and either parent. The court could not disregard the uncon-

havior of its parents." Robert J. Shulman, Comment, *Children of a Lesser God: Should the Fourteenth Amendment be Altered or Repealed to Deny Automatic Citizenship Rights and Privileges to American Born Children of Illegal Aliens?*, 22 Pepp. L. Rev. 669, 705 (1995); *accord* Max Stier, Note, *Corruption of Blood and Equal Protection: Why the Sins of the Parents Should Not Matter*, 44 Stan. L. Rev. 727, 728 (1992). It originally applied to prevent the inheritance of property and has been used to describe the punishment of children born out of wedlock. *See* Shulman, *supra*, at 705–07; Stier, *supra*, at 736–37.

11. *See* U.S. Const. art. I, § 9 (prohibiting bills of attainder); U.S. Const. art. III, § 3, cl. 2 (prohibiting the corruption of blood for attainders of treason); Tex. Const. art. I, § 21 ("No conviction shall work corruption of blood...."); Stier, *supra*, at 729 ("The notion that children should not be made to pay for the misconduct of their parents, the Corruption of Blood Principle, is deeply embedded in the Constitution."); *see also Misenheimer v. Misenheimer*, 312 N.C. 692, 325 S.E.2d 195, 198 & n. 2 (1985) (noting that the common law doctrine of corruption of blood was abolished by the United States Constitution; explaining that "[w]hile it may be true that 'the gods visit the sins of the fathers upon the children', this Court will not do so" (citations omitted)).

12. Comparison has been made to corporate branding: "Sometimes the reputation of a brand suffers because of historical accident or mere coincidence. When a brand carries negative connotations because of mere happenstance, unbranding can clarify the relationship between the tarnished brand and the firm's goods or services." Aaron Perzonowski, *Unbranding, Confusion, and Deception*, 24 Harv. J.L. & Tech. 1, 16 & n. 82 (2010) (noting that the daughter-in-law of investment scam artist Bernie Madoff petitioned a New York court to change her children's names "to escape the stigma of Madoff's crimes").

troverted evidence favoring Brittain on this factor. In particular, Brittain testified that H.S.B. would share the same last name as his older brother, who would attend the same church and schools due to their closeness in age. Chalifoux has no other children, and thus, the use of Brittain's surname would more strongly associate H.S.B. with a family unit consisting of his brother and the custodial parent. *See, e.g., In re S.M.V.*, 287 S.W.3d at 450 (affirming name change partly because there was a potential for confusion resulting from the child having a surname different from both biological parents, and the new surname was shared with a full sibling, thus encouraging familial bond); *Scoggins*, 200 S.W.3d at 837–42 (affirming change from mother's maiden name to biological father's partly because the new name would encourage familial bond between the child's half-siblings who were unaware that the child was their sibling despite knowing the child, father's surname was well-respected in the community, and child expressed desire to change name); *In re Guthrie*, 45 S.W.3d at 726 (affirming change from mother's former husband to biological father's surname partly because there was no family in the child's life with the original name, and there was a family history and heritage associated with the father's name).

■ The trial court also found that Chalifoux maintained a significant relationship with the child. The court was free to resolve conflicts in the testimony and reach this conclusion. But to hold that this finding supports a name change ignores the fact that Brittain also maintained a significant relationship with the child as the custodial parent. When both parents maintain a relationship with the child, this fact does not weigh in either parent's favor. *See In re Iverson*, 241 Mont. 140, 786 P.2d 1, 3 (1990) (Barz, J.,

dissenting) (reasoning that the father's acknowledgment of paternity and intent to seek visitation did not favor changing the child's name because the mother likewise acknowledged maternity and assumed the day-to-day responsibility and care for the child); *see also In re J.K.*, 922 S.W.2d at 223 (finding an abuse of discretion when the trial court changed the child's surname from the father's to the mother's because, even though the father did not request or obtain visitation and did not intend to develop a relationship with the child, there was no evidence that using the father's surname would be detrimental to the child). Here, both Brittain and Chalifoux maintained a significant relationship with the child. Chalifoux may be commended for promptly asserting and establishing his paternal rights and obligations, but this fact does not support changing the child's name.

*3. Parents' assurances to not change name*

We assume that this factor from the Dallas Court, "assurances by the mother that she would not change her name," is intended to apply to either parent because the best interest of the child would be served by no further anticipated name changes. *In re Guthrie*, 45 S.W.3d at 725–26. Here, Chalifoux offered no evidence regarding whether he would change his surname. Brittain offered evidence that she would not change her surname if she ever married in the future and that she would not change either of her sons' names. There was no evidence favoring a name change.

*4. Length of time and identity with name*

■ This factor is neutral. The child was less than one year of age at the time the court ordered a name change. The mere short-lived use of a name does not support a finding that a change would be in the best interest of the child even

though the opposite would weigh against a name change. Neither party presented evidence that the child at this age could identify with one of the surnames.

### 5. Child's preference and maturity

This factor is also neutral. Although a child's preference is an extremely significant factor for older children,[13] H.S.B. was not old enough to express a preference for either name. Chalifoux could present no evidence to show that the child preferred a name change. However, the absence of evidence on this factor neither helps nor hurts the analysis.

### 6. Motives of parents

▇ Again, this factor is neutral and does not support a name change. Both Chalifoux and Brittain presented evidence that they were motivated by the child's best interest, and neither party presented any evidence to suggest the other party had other ill motives. Chalifoux's conclusory testimony that he thought using the paternal surname would be in the child's best interest was not itself evidence of best interest. *See Vazquez v. Vazquez*, 292 S.W.3d 80, 85 (Tex.App.-Houston [14th Dist.] 2007, no pet.) (holding that there was legally insufficient evidence to support the trial court's conservatorship ruling because the mother's conclusory opinion that the conservatorship would be in the best interests of the children did not rise to the level of competent evidence).

### CONCLUSION

Chalifoux, as the parent seeking the change, needed to provide some evidence that a change would be in the child's best

interest or that Brittain's surname would be detrimental. He did not identify any particular reason why keeping the Brittain surname would be detrimental or harmful to the child, and he presented no evidence on whether the name change would help avoid embarrassment or confusion for the child, whether either name was more or less respected in the community, whether the child would be more likely to associate with a family unit using the Chalifoux surname, or whether Brittain desired to impair the father-son bond. Accordingly, Chalifoux presented legally insufficient evidence to support a finding that a name change would be in the child's best interest, and the court abused its discretion in ordering the name change. *See In re M.C.F.*, 121 S.W.3d at 897–99 (finding an abuse of discretion when the trial court changed the child's surname from the mother's to the father's because the father presented no evidence and the mother presented evidence to the contrary; for example, the child would be part of an extended family unit that used the mother's surname, the father had no family or community ties in the area, the father's misconduct made the name less respected, and the mother made assurances to keep her last name if she remarried).

Brittain's second and third issues are sustained. We reverse the portion of the trial court's order granting the name change and render judgment that the child's surname shall remain Brittain.

---

**13.** *See Scoggins*, 200 S.W.3d at 841 (finding no abuse of discretion in changing the child's name in part because the nine-year-old child preferred to change her name); *In re A.C.B.*, 2001 WL 931567, at *1 (finding no abuse of discretion in retaining the mother's surname in part because "the intelligent and articulate eight-year-old expressed a desire not to change her name"); Kelly, *supra*, at 64, 69–70, 80 (discussing the use of a child's preference in the best interest test, criticizing the custodial parent presumption for failing to consider the child's preference, and concluding that the "wishes of a mature child should always be respected on a matter so basic as his or her name").