**Affirmed and Memorandum Opinion filed February 12, 2019.**



In The

# Fourteenth Court of Appeals

### NO. 14-17-00216-CV

## IN THE MATTER OF THE MARRIAGE OF D.E.L. AND J.J.P.

**On Appeal from the 308th District Court
Harris County, Texas
Trial Court Cause No. 2015-32671**

## M E M O R A N D U M   O P I N I O N

This is an appeal from a final decree of divorce dissolving the parties' marriage and adjudicating certain issues pertaining to the parties' children. As appellant, Husband asserts the judgment is error for four reasons: (1) the associate judge lacked authority to rule on certain motions; (2) the trial court erred in granting Wife's motion to reconsider, which she filed after the court pronounced judgment orally; (3) the trial court did not afford Husband an opportunity to object to Wife's request to change the children's last name; and (4) the trial court erred in restricting communication between the children and Husband, who is incarcerated, to mail correspondence. We affirm the trial court's judgment.

## Background

Appellant J.J.P. (Husband) and appellee D.E.L. (Wife) were married in 2005 and have two sons, A.L., 12 years old, and U.L., 10 years old.[1]  Husband is currently incarcerated, serving a life sentence without parole.  When he committed the offense, the children were three and one years old, respectively.

Wife filed a petition for divorce on grounds of insupportability, which was consolidated with a suit affecting the parent-child relationship (SAPCR).  Wife asked to be appointed sole managing conservator, to change the children's last name from Husband's surname to Wife's maiden name, and to prohibit Husband from having any contact with the children.

Wife testified that none of Husband's family offered assistance after his imprisonment.  Husband's sister occasionally spoke with Wife, but was not a consistent part of the children's lives.  Wife believed that allowing Husband any contact with the children "would threaten [their] emotional welfare."  When asked to explain, Wife said: "They don't know [Husband]. . . .  They were 1 and 3 when this happened."  Wife testified that she is afraid of Husband, and that Husband is a former gang member.

Wife believes it "would be a source of anxiety, embarrassment, inconvenience or disruption" to the children if they kept Husband's last name.  Based on conversations with the children, Wife said that the children "do not identify themselves with that last name because they don't know of that person, and they live with their mother and they are completely fine with changing their name."

---

[1] The trial court ordered the record sealed.  We refer to the parties by generic descriptors and the parties' children by their initials.  We also describe the factual background as generically as possible, while fulfilling our responsibility to hand down a public opinion that "explain[s] our decision based on the record." *Ex parte N.B.J.*, 552 S.W.3d 376, 378 n.1 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

At the conclusion of the trial, the judge rendered judgment orally, granted Wife's petition for divorce, named Wife sole managing conservator, named Husband possessory conservator, ordered that Wife maintain a post office box for communication from Husband, granted Husband's sister visitation with the children on the first Sunday of alternate months, and ordered the children's last name changed to Wife's maiden name. The judge did not order any child support.

Wife moved for reconsideration with respect to visitation rights by Husband's sister. Wife argued that the trial court had no authority to grant Husband's sister visitation rights when the sister was not a party to the suit. The trial court held a hearing on Wife's motion on January 27, 2017. At Husband's request, the trial court continued the hearing until February 15, 2017. Following the hearing, the trial court granted Wife's motion to reconsider. The trial court then signed a final decree of divorce, which was identical to the oral rendition, except that the final decree did not award any visitation to Husband's sister.

No party requested additional findings of fact and conclusions of law. Husband appeals.

## Standards of Review

Common standards of review apply to several of Husband's issues, so we discuss them at the outset.

Husband challenges certain decisions the trial court made in its discretion. When we review rulings for an abuse of discretion, we determine whether the trial court acted arbitrarily or unreasonably or if it clearly failed to correctly analyze the law or apply the law to the facts presented. *See In re P.A.C.*, 498 S.W.3d 210, 217 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).

Husband also at times challenges the sufficiency of the evidence. "Insufficient evidence" is not an independent issue when the standard of review is abuse of discretion; sufficiency of the evidence is merely a factor to consider. *See In re H.S.B.*, 401 S.W.3d 77, 81-82 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *In re R.T.K.*, 324 S.W.3d 896, 899 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). In determining whether the trial court abused its discretion because the evidence was legally or factually insufficient, we consider whether the record contains some evidence of "a substantial and probative character" to support the trial court's decision. *H.S.B.*, 401 S.W.3d at 82.

Accordingly, the abuse of discretion standard under these circumstances involves a two-pronged analysis: (1) whether the trial court had sufficient information upon which to exercise its discretion; and (2) whether the trial court erred in applying its discretion under the appropriate legal authorities. *Id.*; *In re Marriage of McNelly*, No. 14-13-00281-CV, 2014 WL 2039855, at *11 (Tex. App.—Houston [14th Dist.] May 15, 2014, pet. denied) (mem. op.).

Further, because the record does not reflect that findings of fact were requested or signed, we infer that the trial court found all facts necessary to support its judgment. *See P.A.C.*, 498 S.W.3d at 217. Under these circumstances, we review the record to determine whether some evidence supports the judgment and the implied findings, considering only the evidence most favorable to the judgment and upholding the judgment on any legal theory supported by the evidence. *Id.*

## Analysis

### A. Wife's Motion to Reconsider

In his first two issues, Husband challenges the relief granted in the trial court's order on Wife's motion to reconsider and final decree, which omitted visitation rights

for Husband's sister. In his first issue, Husband argues that the associate judge who ruled on Wife's motion to reconsider lacked authority to do so, and the resulting order granting reconsideration is thus void.

At the time of these proceedings, Judge James Lombardino was the judge of the 308th Judicial District Court of Harris County, Texas. Judge Lombardino presided over the trial, as well as the first part of the hearing on Wife's motion to reconsider. Judge David Sydow, an associate judge, held the resumed hearing and signed the order granting Wife's motion to reconsider. Judge Lombardino then signed the final decree of divorce, which incorporated the relief granted in the order on Wife's motion to reconsider. On appeal, Husband argues that because there is no written order assigning the case to an associate judge, Judge Sydow was not authorized to rule on the motion to reconsider.[2]

We need not decide whether Judge Sydow held statutory authority to rule on Wife's motion to reconsider, because Judge Lombardino had authority to modify the judgment at any point during the court's plenary power. *See Matter of Marriage of Williams*, No. 14-15-00090-CV, 2016 WL 2997094, at *1 (Tex. App.—Houston [14th Dist.] May 24, 2016, no pet.) (mem. op.) (appellate courts interpret variances between a judge's oral rendition and the final decree to effectively be modifications). Assuming for the sake of argument that Judge Sydow lacked authority to rule on Wife's motion for reconsideration, Judge Lombardino granted the same relief in the final judgment and Husband has not challenged his authority to do so or the validity of the final

---

[2] *See* Tex. Fam. Code § 201.005(a) (a judge of a court may refer to an associate judge a suit involving the marriage relationship or protection of the family over which the court has jurisdiction, including any matter ancillary to the suit); § 201.006(a) (judge of the referring court shall render an individual order of referral or a general order of referral specifying the class and types of cases to be heard by the associate judge).

judgment. Thus, the ruling granting Wife's motion for reconsideration does not fail for voidness.

We therefore turn to Husband's second issue, in which he contends that omitting visitation rights for Husband's sister in the final decree was an abuse of discretion.[3] Wife sought reconsideration of the visitation issue on the ground that Husband's sister was not a party to the proceedings. It is undisputed that Husband's sister was not a named party and did not intervene in the consolidated divorce/SAPCR proceeding.[4] In the absence of a non-parent's intervention, the trial court has no authority to award any non-party visitation. *See In re H.R.L.*, 458 S.W.3d 23, 31 (Tex. App.—El Paso 2014, orig. proceeding) (trial court had no jurisdiction to award grandmother relief without first determining she had standing and granting her leave to intervene); *see also* Tex. Fam. Code § 102.004(b) ("the court may grant a grandparent or other person . . . leave to intervene in a pending [SAPCR] suit . . . "); *In re Marriage of Campbell*, No. 06-08-00088-CV, 2009 WL 483602, at *5 (Tex. App.—Texarkana Feb. 27, 2009, no pet.) (mem. op.) (granting visitation to non-party in divorce was abuse of discretion in the absence of evidence showing intervention of non-party and in the absence of evidence that the children's denial of access to non-party would significantly impair their emotional well-being). We conclude that the trial court correctly analyzed and applied the law regarding the issue raised in Wife's motion for reconsideration and did not abuse its discretion in granting relief.

---

[3] In his prayer, Husband asks the court "to re[c]ite the names of all parties by amending the judgment to include the names of all parties." We liberally construe this request, along with Husband's briefed arguments, as challenging the trial court's omission of visitation rights for Husband's sister.

[4] Husband notes that he signed a statutory durable power of attorney in favor of his sister. *See* Tex. Est. Code §§ 751.001 *et seq.* This fact does not alter our analysis of the pertinent issue; Husband's sister made no attempt to intervene in her individual capacity to claim any right of visitation.

6

Husband also argues that the trial court erred in granting Wife's motion to reconsider without affording Husband a meaningful opportunity to be heard. Husband complains that he lacked a sufficient amount of time to respond to Wife's motion before the hearing, resulting in surprise, prejudice, and a violation of his constitutional right to due process.[5]

We disagree that Husband lacked a meaningful opportunity to respond to Wife's motion, that he suffered surprise and prejudice, or that his due process rights were violated. The record indicates that Husband appeared by telephone during the hearing on Wife's motion to reconsider. At Husband's request, the trial court continued the hearing to allow Husband the opportunity file a response. Husband filed a written response before the hearing resumed on February 15, 2017.

Given that Husband had notice of Wife's motion to reconsider, appeared telephonically at the hearing, successfully requested the court continue the hearing to allow time to file a response, filed a response, and appeared telephonically when the hearing resumed, we conclude that he received the due process contemplated under the United States and Texas Constitutions. *See Perry v. Del Rio*, 67 S.W.3d 85, 92 (Tex. 2001) (recognizing that Texas Constitution's "due course of law provision at a minimum requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner"); *Derbigny v. Bank One*, 809 S.W.2d 292, 295 (Tex. App.—

---

[5] Husband also contends that the trial court could not set Wife's motion for hearing earlier than twenty-one days after she filed it, citing Texas Civil Practice and Remedies Code section 74.351(a) and Harris County Local Rule 3.8. Neither the statute nor the rule supports Husband's argument. Section 74.351 governs service of expert reports in medical malpractice cases and thus does not apply to this divorce proceeding. *See* Tex. Civ. Prac. & Rem. Code § 74.351(a). Local Rule 3.8 provides that all judgments and orders must be submitted to the court for signing within ten days from the date of rendition, unless otherwise directed by the court; the rule has no bearing on the submission date for Wife's motion to reconsider. *See* Harris Cty. Fam. Loc. R. 3.8.

Houston [14th Dist.] 1991, no writ) ("Fundamental to the concept of due process is the right to be heard.").

For these reasons, we overrule Husband's first and second issues.

**B.    Children's Name Change**

In his third issue, Husband challenges the trial court's decision to change the children's surname to Wife's maiden name. Husband argues that the trial court abused its discretion by substantively granting that relief and by failing to afford Husband an opportunity to object to Wife's name-change request.

We review a trial court's decision to change the name of a minor child for an abuse of discretion. *See H.S.B.*, 401 S.W.3d at 81.

1. *Changing children's surname*

Husband argues that insufficient evidence supports the trial court's determination that changing the children's last name is in their best interest.[6]

In Texas, the primary concern in determining whether to change a child's name is the child's best interest—not the interests of the parents. *See* Tex. Fam. Code § 45.004(a)(1); *H.S.B.*, 401 S.W.3d at 83. Texas courts, including this court, have

---

[6] Husband also argues that Wife's petition to change the children's surname did not comport with statutory requirements. *See* Tex. Fam. Code § 45.002 (requirements of petition to change the name of a child). In her live pleading, Wife requested that her children's last name be changed, but, contrary to statutory requirements, she did not include written consents from the children, who were both over ten years old. *Id.* § 45.002(b) ("If the child is 10 years of age or older, the child's written consent to the change of name must be attached to the petition."). The record before us, however, does not show that Husband specially excepted to the sufficiency of the petition or called the missing written consent to the trial court's attention. Consequently, Husband has waived any error presented by the lack of a written consent. *See In re C.C.N.S.*, 955 S.W.2d 448, 449 (Tex. App.—Fort Worth 1997, no pet.) (mother waived complaint that father's pleadings did not meet statutory requirements for requesting a name change by failing to object in the trial court); *see also In re Adams*, No. 01-00-00496-CV, 2001 WL 1168278, at *1-2 (Tex. App.—Houston [1st Dist.] Oct. 4, 2001, no pet.) (not designated for publication) (same).

applied at least six non-exclusive factors to determine whether a name change is in a child's best interest. *H.S.B.*, 401 S.W.3d at 84. Courts are not required to attribute the same weight to each factor in a given case. *See id.* Each factor's significance depends on the facts of a case, so one or more factors may be irrelevant to a dispute. *See id.* We consider the following factors:

> (1) whether the name change would reduce anxiety, embarrassment, inconvenience, confusion, or disruption for the child, which may include parental misconduct and the degree of community respect (or disrespect) associated with the name;
>
> (2) whether the name change would help the child identify with a family unit;
>
> (3) whether the parent whose surname the child will bear assures that the parent will not change his or her surname in the future;
>
> (4) the length of time the child has used a name and the level of identity the child has with the name;
>
> (5) the child's preference; and
>
> (6) the parent's true motivations for requesting the name change.

*See id.*

Wife expressed her concern that Husband's last name has "negative associations" considering his incarceration for a gang-related murder. When asked if she is "concerned that classmates may eventually Google the boys' names and [Husband's] name will come up," Wife said yes, that she is worried that Husband's name would make her children "an easy target to be bullied." Additionally, Wife is concerned that the name would come up on potential employers' background checks. Wife mails family Christmas cards, which state only Wife's maiden name. Wife also testified that she would not change the children's last name again, such as if she were to remarry. Finally, Wife testified that the children "are completely fine with changing their name," because they do not know Husband and do not identify with Husband's

9

surname. Thus, substantial and probative evidence supports at least five of the six factors in favor of the name change. *See id.* Husband asserts in his brief that Wife wants to change the children's name out of vindictiveness, but no evidence supports this allegation. The trial judge listened to the testimony first-hand, and credibility decisions of this sort are committed to the judge's substantial discretion. *See Matter of Marriage of Harrison*, 557 S.W.3d 99, 121 (Tex. App.—Houston [14th Dist.] 2018, pet. filed); *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.)

After weighing the factors and construing the evidence in the light most favorable to the judgment, we conclude that Wife presented sufficient evidence to support the trial court's implied finding that the name change is in the children's best interest. *See In re J.N.L.*, 528 S.W.3d 237, 244-45 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

### 2. *Opportunity to object*

Husband also argues that his due process rights were violated because the court did not allow him to testify regarding the proposed name change or afford him a chance to object to Wife's request.

As detailed above, Wife testified about her desire to change the children's last name, and her reasons for doing so. Husband did not object during the hearing. When he cross-examined Wife, Husband did not ask her any questions regarding the requested name change. Wife called Husband as a witness, but did not ask him any questions regarding the children's surname. After his direct examination, the trial judge asked, "[Husband], do you have anything else that you want to say?" Husband then testified at length about his love for his children and his desire to connect with his children "through letters, through visitation." The trial judge again asked, "Anything else?" Husband responded that he was financially responsible when he, Wife, and the

10

children were living together. The judge then stated, "All right. Anything else before I -- I'm going to render." Husband did not say anything further or object. Then the judge announced its ruling, including the "[n]ame change granted for the children." The judge asked Husband, "do you have any questions about the rendition," and Husband responded that he "couldn't hear." The judge then repeated the entire rendition, including the name change. Husband did not object to the form of the judgment as rendered orally. Following oral rendition but before the court signed the final decree, Husband filed a written objection to Wife's name change request. The court signed the final decree three days later.

The record indicates that Husband participated meaningfully at trial. He cross-examined Wife and testified on his own behalf. The judge accommodated Husband's participation by phone, including repeating statements or questions when Husband indicated that he could not hear the proceedings. There is no indication that Husband's testimony was hindered or limited. Neither at the conclusion of the evidence nor after the court's rendition did Husband object to Wife's request to change the children's last name. After the court announced that it granted the name change, Husband filed a written objection to the name change, which stated his position on the name change issue. By later signing a final judgment granting the name change, the trial court impliedly overruled Husband's objection.

We conclude that Husband received an opportunity to be heard "at a meaningful time and in a meaningful way." *Perry*, 67 S.W.3d at 92. No due process violation appears on this record regarding the children's name change.

\* \* \*

Sufficient evidence supports the trial court's finding that the name change is in the children's best interest. Further, this record does not support Husband's contention that he was not afforded a fair opportunity to object to the children's name change. For

11

these reasons, we hold that the trial court did not abuse its discretion in ordering that the children's surname be changed to Wife's maiden name.

We overrule Husband's third issue.

## C. Limited Communication

In his fourth issue, Husband argues that the trial court erred in ordering that the children and Husband may communicate only by mail correspondence.

### 1. *Applicable law and standard of review*

The terms of an order imposing restrictions or limitations on a parent's right to access to a child may not exceed those required to protect the child's best interests. *See* Tex. Fam. Code § 153.193. Complete denial of access should rarely be ordered. *See Tran v. Nguyen*, 480 S.W.3d 119, 125 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *In re Walters*, 39 S.W.3d 280, 286-87 (Tex. App.—Texarkana 2001, no pet.). A parent appointed possessory conservator normally should have periodic visitation privileges with his or her child and should not be denied such privileges altogether except in extreme circumstances. *Tran*, 480 S.W.3d at 126.

We review a trial court's determination of conservatorship and access issues under an abuse of discretion standard. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007); *Cain v. Cain*, No. 14-07-00115-CV, 2007 WL 4200638, at *3 (Tex. App.—Houston [14th Dist.] Nov. 29, 2007, no pet.) (mem. op.).

### 2. *Application*

By appointing Husband possessory conservator, the trial court necessarily found that his appointment was not a danger to the children's physical or emotional welfare. However, by severely restricting Husband's access to and contact with the children, the trial court must have also determined that the children's interests are best served if Husband's communication with them is limited to mail correspondence. Husband

argues that the trial court's decision is against the weight of evidence presented, which is a challenge to the sufficiency of the evidence. We therefore decide whether sufficient evidence of a substantial and probative character supports the trial court's decision. *See H.S.B.*, 401 S.W.3d at 81-82.

The children were one and three years old when Husband committed the offense for which he is now incarcerated. The children have never visited Husband at the prison. The children told Wife that they do not know Husband. Wife testified that she was worried that allowing the children to speak to Husband on the phone or visit him in prison would threaten the children's emotional welfare. Wife has "honestly . . . not found a way to tell them" that Husband is in prison, the crime of which he was convicted, or the sentence he is serving. Wife is afraid of Husband and wants to shield her children from him, in part because she says he once belonged to a gang and because he was convicted of a gang-related murder.[7]

On these facts, we cannot say that the trial court abused its discretion in limiting contact between the children and Husband to mail correspondence only. *See Malekzadeh v. Malekzadeh*, Nos. 14-05-00113-CV & 14-06-00341-CV, 2007 WL 1892233, at *4 (Tex. App.—Houston [14th Dist.] July 3, 2007, pet. denied) (mem. op.) (evidence supported trial court's implied finding that allowing incarcerated father to have access to children beyond mail correspondence would not be in children's best interest); *In the Interest of C.U.*, No. 13-03-566-CV, 2004 WL 1921227, at *4 (Tex. App.—Corpus Christi Aug. 30, 2004, no pet.) (mem. op.) (trial court took into account the needs and best interest of child, the circumstances of the conservators, and other relevant factors when limiting parents' conservatorship on the basis that parent had been incarcerated for essentially child's entire life and a relationship had not developed

---

[7] Husband asserts that he was convicted wrongly.

13

between parent and child); *accord also Lair v. Lair*, No. 02-12-00249-CV, 2014 WL 2922245, at *6 (Tex. App.—Fort Worth June 26, 2014, no pet.) (mem. op.) (no abuse of discretion in limiting incarcerated father's access to children to once-weekly, fifteen-minute telephone call).

We overrule Husband's fourth issue.

## Conclusion

Having overruled all of Husband's issues on appeal, we affirm the trial court's judgment.

/s/    Kevin Jewell
        Justice

Panel consists of Justices Jewell, Zimmerer, and Spain.